The Board of Supervisors of Schuyler County, Appellant, *v.* The People *ex rel.* The Rock Island and Alton Railroad Company, Appellees.

The Same, Appellant, *v.* Charles Farwell, Appellee.

### APPEALS FROM SCHUYLER.

The title of the act of the legislature incorporating the Rock Island and Alton Railroad Company, is a sufficient compliance with the twenty-third section of the third article of the constitution.

It is not necessary that the journals of the senate should state that a law was read three times before being put upon its final passage. This is presumed to have been done unless the journal affirmatively shows that it was not done.

The board of supervisors of Schuyler county are not authorized to issue bonds under the act incorporating the Rock Island and Alton Railroad Company.

THESE cases were, by consent, tried together, upon the same evidence.

The first case is mandamus, to compel the defendant to issue and deliver to the relator, bonds of the county of Schuyler to the amount of $16,000, in payment of an alleged subscription of said county to the stock of the relator, railroad company.

The writ alleges the charter and organization of the railroad company; an order of the board of supervisors of said county, directing an election to be held as stated in the order hereinafter set forth; that at said election, a majority of the voters voting on the question, voted in the affirmative; a subscription of $75,000 to the capital stock of said company, by the chairman of said board, under authority of said board, under acts of 1855 and 1857, hereinafter mentioned, on the 31st day of July, 1858. Orders of said board directing the issuing and delivery of bonds to the amount of said subscription—the issuing and delivery of $59,000 accordingly; that $16,000 remain unissued, and seeks the delivery of the same $16,000. Petition filed October 19, 1860.

The return alleges, that the act incorporating said railroad company, approved February 14, 1855, never became a law; that the election in said writ mentioned, is illegal, and was not held in pursuance of said act; that the board of supervisors had no authority to cause said election to be held, said subscription to be made, or said bonds to be issued; that the act of February 14, 1855, and the act of February 14, 1857, are respectively void; that by neither of said acts had the board of supervisors power to cause said election to be held, said subscription to be made, or any bonds to be issued; that the same was not done under any general law of the State; that said county is not bound to issue said bonds; that the County Court of said county never acted in the premises; that said railroad is an impracticable enterprise, and has become a failure; that the organization of said railroad company was false and colorable, and without the requisite subscription or payments; that the other counties through which said railroad runs, have not and will not subscribe to the stock of the same, and that the enterprise is substantially abandoned. Alleges that the railroad company fraudulently procured the subscription to be made, alleging fraud generally and specifically—fraudulent representations of the company as to the condition of the road, as to subscriptions

before then obtained, and as to the action of other counties, etc. Alleges that the board of supervisors, in March, 1860, rescinded its orders directing said bonds to be issued, and ordered that no more bonds be issued. Alleges that said subscription is void, and not binding upon said county.

It was agreed that these causes be tried upon the evidence without formal pleadings, each party to have the benefit of any special pleadings, and the same as though pleadings were verified by oath.

The second case is assumpsit, to recover upon thirty-six interest coupons of said bonds issued, of $35 each.

Both cases were decided against the board of supervisors, who bring them by appeal to this court.

As the decision is based on questions of constitutional law, and of the construction of statutes, it is not thought necessary to insert the evidence here.

Skinner, Benneson & Marsh, for Appellants.

C. L. Higbee, for Appellees.

Caton, C. J. The same questions are involved in both these cases, and they will be considered together.

We think the title of this act sufficient to embrace the whole of the law, and that it is a compliance with the constitutional requirement. All the provisions of the act are appropriately designed to carry out the object of the corporation. If it was proper to authorize subscriptions to the stock, it was certainly proper to enable individuals or counties to subscribe and specify the terms and conditions on which they might subscribe, and the mode of making the subscription.

It is next objected that the senate journal does not show that the bill was read three times in that body before it was put upon its final passage, and that hence the constitutional requirements to make it a law were not observed.

The constitution does require that every bill shall be read three times in each branch of the General Assembly before it shall be passed into a law, but the constitution does not say that these several readings shall be entered on the journals. Some acts performed in the passage of laws are required by the constitution to be entered on the journals, in order to make them valid, and among these are the entries of the ayes and nays on the final passage of every bill, and we held in the case of *Spangler* v. *Jacoby*, 14 Ill. 297, that where the journal did not show this, the act never became a law. But where the constitution is silent as to whether a particular act which is required

to be performed shall be entered on the journals, it is then left to the discretion of either house to enter it or not, and the silence of the journal on the subject ought not to be held to afford evidence that the act was not done.  In such a case we must presume it was done, unless the journal affirmatively shows that it was not done.  We think this act was properly passed by both houses of the General Assembly, and when approved by the governor it became a law.

The remaining question is, whether this subscription was made in pursuance of this law.  The county of Schuyler adopted the township organization law in 1850, and by an amendment to that law, passed in 1851, all the control over county affairs which had previously existed in the County Courts, was given to the board of supervisors.  The act in question was passed in 1855, and the 16th section provides that "each of the counties through which said railroad may be located or run, shall have the power and right, by the County Court of such of the said counties respectively, to subscribe for stock and become stockholders in said railroad, the said counties each being the representative of the stock so subscribed, and for this purpose each of the said counties, as aforesaid, is hereby authorized from time to time, to borrow such sum or sums of money as may be necessary for the purpose aforesaid; to issue, and in any way dispose of, or hypothecate their bonds in denominations of not less than four hundred dollars, bearing a rate of interest not exceeding seven per cent. per annum for any amount so borrowed, and to mortgage the shares so taken, or convey the same by deed of trust, to secure the payment of any debt contracted by said county so subscribing, for the purpose aforesaid; and each of said counties are hereby authorized in the premises aforesaid to, by their County Court, as fully act as individuals might or could do; each of said counties shall, and it is hereby made the duty of the County Court of each of said counties to order an election to be held on the first Monday in June, 1855, or at such other time as the County Court may order, from time to time, and a vote to be taken in each of said counties through which the said railroad may pass, for and against the county taking stock in said railroad.  If a majority of the votes cast are in favor of stock as aforesaid, it shall be the duty of the County Court to subscribe for stock to the amount of not less than fifty and not more than one hundred thousand dollars; provided that the stock so subscribed shall alone be responsible for the stock taken by any of the counties, as aforesaid."

Two years later that act was amended; the second section of which amendment is this: "The County Courts of Scott, Schuyler, McDonough and Warren counties, and any other counties

through which this road may pass, are hereby authorized and directed to issue bonds in payment of all stock subscribed or to be hereafter subscribed to said Rock Island and Alton Railroad Company; and are hereby further authorized and empowered to levy a special tax, and make all other needful regulations sufficient and adequate for the payment of interest on any bond so issued by said counties or either of them." Now, all the acts required by both these laws to be done by the County Court were performed by the board of supervisors, and the County Court has taken no part in them, and the important question arises, are they binding upon the county? We see no way of avoiding the conclusion that they are not. In the case of *Prettyman* v. *Supervisors of Tazewell County*, 19 Ill. 406, a law passed in 1849 authorized the County Court to do similar acts, and we held that the township organization law subsequently passed, transferred the power from the County Court to the board of supervisors, and that consequently the county was bound by the acts thus performed by the board of supervisors. But here the legislature, knowing, as we are bound to presume, that the county had adopted township organization, and that there was a board of supervisors in the county, which by the general law, was vested with general jurisdiction over all county matters, and particularly all financial matters, saw proper, for some reason, which we are unable to divine, to confer this power upon the County Court, instead, as we should suppose, of the more appropriate tribunal—the board of supervisors. There has been no subsequent law giving the least color to say that the power has been transferred from the County Court, where it was expressly vested, to the board of supervisors. These bonds were, then, executed by the chairman of the board of supervisors, without the least shadow of authority. As well might the sheriff of the county, or the Circuit Court, have undertaken to perform these acts, and execute these bonds, as this board of supervisors. There was a total want of authority, and the acts were consequently void. Nor can we compel the defendants to go on and do further void acts by issuing more bonds, or paying interest on those already issued.

The judgments in both cases must be reversed.

*Judgments reversed.*

WALKER, J., being interested, took no part in the decision of these cases.