WILLIAM B. CLARKE, Plaintiff in Error, *v*. THE BOARD OF SUPERVISORS OF HANCOCK COUNTY, Defendant in Error.

ERROR TO HANCOCK.

The board of supervisors alone, have the power to order an election to determine whether the county will subscribe to stock in a railroad company, and to issue the bonds therefor; and they cannot delegate their power. But this rule does not prevent the board of supervisors, after they have taken all necessary action in the matter, from directing that the bond shall be signed by the county judge. The county judge then becomes merely the instrument, by which the action of the board is manifested.

In ordering an election, to determine whether a county will subscribe for stock to aid in building a railroad, it is improper to submit the question, whether two different roads shall be so aided, by a single vote; so that the two propositions cannot be voted upon separately. The county may be restrained from issuing bonds in pursuance of such a vote; but when issued they are not necessarily void, in the hands of a *bona fide* holder.

Where county bonds, to aid the construction of a railroad, have been issued, in pursuance of an election held without warrant of law, as where it has been ordered by a person or tribunal having no such authority, they are absolutely void. But where the election has been properly authorized, and there has been informality in the manner of submitting the question to the people (such as submitting two propositions as to aiding two different roads, to a single vote), the bonds may be rendered valid, in the hands of an innocent holder, by the acquiescence of the people, and their subsequent ratification by the county, in levying a tax and paying interest upon them.

THIS was an action, commenced by the plaintiff in error against the defendant in error, in the Circuit Court of Hancock county.

The declaration counts on divers interest coupons; plea, general issue. Trial by the court, SIBLEY, Judge, presiding, and judgment for defendant.

The bill of exceptions shows, that plaintiff read in evidence one coupon, as follows:

$80    $80
$80

CARTHAGE, Hancock Co., Ills., July 1st, A. D. 1856.

The Treasurer of Hancock county will pay the bearer, at the American Exchange Bank, in the city of New York, on the first day of July, A. D. 1857, eighty dollars, interest due on bond No. 1 to 100.

J. M. FERRIS, County Judge.

and three like coupons, Nos. two, three, and four, payable annually, after the day of payment of said coupon above set forth; and plaintiff proved that the same were interest coupons of one bond of $1,000, dated July 1, 1856, payable in twenty years from July 1, 1856, purporting to have been

issued by the county of Hancock, payable to the Mississippi and Wabash Railroad Company or bearer; and read in evidence a coupon, in the following form :

Eight per cent. stock.

Hancock County,                                              State of Illinois.

Rail Road Bond No. 35.

Pay to the bearer eighty dollars, on the first day of July, 1857, interest to that date.

JOHN M. FERRIS,
Judge of County Court of Hancock county.

and read four like coupons, payable annually, after the first day of July, 1857, and proved that said coupons were given for annual interest on a bond for $1,000, in all respects like the bond first above named, except that the same was payable to the Warsaw and Rockford Railroad Company or bearer ; and proved that the signatures to the said coupons and bonds were in the handwriting of John M. Ferris, then county judge of said county ; and proved that said coupons were, before the commencement of this suit, and after due, duly presented for payment, by plaintiff, at the treasurer's office of Hancock county, and that payment thereof was refused by said Hancock county.

Plaintiff also read from the records of the County Court of said county, of date August 21, 1855, an order which recites, that application had been made to the County Court for an election to be held in said county for the electors to vote for or against subscription, in the sum of two hundred thousand dollars, one hundred thousand dollars of which for the Mississippi and Wabash Railroad, and one hundred thousand dollars for the Warsaw and Rockford Railroad, and requesting said court to fix the time for which the bonds of said county, proposed to be issued therefor, should run, at twenty years, and to bear interest at eight per cent. per annum ; whereupon it was ordered by said court, that an election be held in said county, at the various places of holding elections therein, on the 29th of September, 1855, by the electors of said county, for the purpose of deciding for or against said county taking stock in the sum of $200,000 : $100,000 in capital stock of the Mississippi and Wabash Railroad Company, to be applied in construction of that part of said railroad lying between the cities of Warsaw and Macomb, by way of Carthage and Fountain Green ; and $100,000 in the capital stock of the Warsaw and Rockford Railroad Company ; the bonds of said county to be issued for stock to run for twenty years, and to draw interest at eight per cent. ; and that the clerk of said court give notice of the holding of such election as notices are given for

elections for state and county officers, and as required by the statute on said subject, approved November 6, 1849, and that the ballots at said election be " for subscription," or " against subscription; " and proved that the board of supervisors of said county, at a meeting thereof duly held on the 20th day of August, 1855, made and entered of record, an order of the same import, and to the same effect, as the said order of the County Court above set forth; and proved that notices were duly posted and given throughout said county, of an election to be held in pursuance of said orders of the County Court and board of supervisors, and submitting the question for and against subscription, as provided for by said orders.

Plaintiff also read in evidence, from the abstract election returns, from the office of the county clerk of said county, the following:

"Abstract of the vote of the election held on Saturday, the 29th day of September, 1855, on the proposition to subscribe, by the county of Hancock, the sum of two hundred thousand dollars, for stock in the Warsaw and Rockford Railroad, and the Mississippi and Wabash Railroad, one hundred thousand of which in each of said roads."

The total footings of said vote are as follows:

For Subscription, 1975

Against Subscription, 553

and proved that a majority of the legal voters of said county, as tested by their next preceding general election, voted in the affirmative of the question so submitted; that J. M. Ferris, as county judge of said county, acting under orders of the board of supervisors, hereafter mentioned, and not otherwise, subscribed to the capital stock of the Mississippi and Wabash Railroad Company, $100,000, payable in the bonds of said county, and to the capital stock of the Warsaw and Rockford Railroad Company the like sum, payable in like manner; that under orders of the board of supervisors hereafter mentioned, said Ferris, as county judge, executed one thousand dollar bonds, in pursuance of said orders, amounting to $200,000, and that half of them were payable to one road or bearer, and the other half to the other road or bearer; that to said bonds were attached coupons for the annual interest thereon for twenty years; that the county clerk of said county signed said bonds, and affixed the seal of the County Court thereto; that said Ferris, as county judge, under said orders signed the same, and alone signed, as county judge, the annual interest coupons for twenty years, at eight per cent. per annum; that said Ferris acted under said orders of the board of supervisors; that said bonds and coupons were, in fact,

issued after the making of said orders directing said subscriptions and the issuance of said bonds; that said county adopted, and was acting under township organization, prior to 1855, and prior to making the order submitting such propositions, and prior to making and issuing said bonds and coupons; that said bonds and coupons were issued to said railroad companies respectively, in payment of said subscriptions; that said county had paid some interest coupons, and had, on one or more occasions, voted for directors of said corporations.

Plaintiff also read from an act, entitled "An Act to amend an act, entitled 'An act to incorporate the Mississippi and Wabash Railroad Company,' approved February 10, 1853," approved February 24, 1859, the following:

"SECTION 11." "The votes taken in the county of Hancock, and in the city of Warsaw, for subscribing stock to said railroad company, are hereby declared to have been legally made, and the issuing of the bonds of said county and city, in the payment of said subscription, is hereby legalized."

And plaintiff read in evidence, from the records of the board of supervisors, the orders of said board, of date March 6, 1856, and November 18, 1856, directing the county judge of said county, to sign, execute and issue the bonds of said county, in sums of $1,000 each, to the amount $200,000; $100,000 thereof to the Warsaw and Rockford Railroad Company, and $100,000 thereof to the Mississippi and Wabash Railroad Company; said bonds to run twenty years, and to bear interest at eight per cent. per annum, payable annually, and to have coupons for the annual interest attached thereto; said bonds also to be signed by the county clerk, and to have the seal of the County Court affixed thereto.

This was all the evidence.

SKINNER, BENNESON & MARSH, for Plaintiff in Error.

J. GRIMSHAW, for Defendant in Error.

WALKER, J. The election, to determine whether the county would become a subscriber to the two roads, was ordered by both the board of supervisors and the County Court. These orders were made more than thirty days before the time fixed for the election, and under them, notice was given and the election held, resulting in a majority in favor of subscription. Afterwards the board of supervisors directed, by an order entered of record, that the bonds should issue, and that J. M. Ferris should, as county judge, sign and execute the same. This he did, in pursuance to the order. It is now insisted,

that inasmuch as the board of supervisors alone had the power to order the election, and to issue and deliver the bonds, that when issued by the County Court they were illegal and void. That as the board of supervisors were exercising a delegated authority, they were bound to pursue it strictly, and were powerless to appoint an agent to exercise that power. This is manifestly the rule, and if in this case it has been violated, the bonds are necessarily void.

All collective bodies, from the very nature of things, are to some extent compelled to employ agents, to record their resolutions, and to preserve the manifestations of their intentions. When they enter into contracts, or execute instruments of any description, where they are composed of large numbers, as a matter of convenience, if not from absolute necessity, they are compelled to designate a single individual to act on behalf of the body. The numerous signatures, if all were to sign an instrument, would occasion inconvenience and delay in executing an agreement. The body therefore must, generally by an order entered upon its records, designate some person to act on its behalf. He may be a member of their own body, or a person unconnected with the organization. This case illustrates the inconvenience of requiring each member of the board to sign the several bonds and coupons.

The board had ordered the election, canvassed the vote, decided that a majority had determined upon subscription, and had resolved, that the county would take the stock and issue the bonds. In all this they were exercising a power delegated by the General Assembly, and this power they could not have delegated to any other person or tribunal. Its exercise was confided to them alone, and they only could execute it legally. But after performing all these acts did they delegate any power, by their entering of record, that the bonds should issue to pay the county subscription, and requiring them to be signed by the county judge? This they might by resolution have required of their presiding officer, any member of the board, or of their clerk.

The law has failed to prescribe the mode of executing these bonds, or to designate any person who shall sign them. And in the absence of such a requirement, they, we think, had the unquestionable right, by order of the board duly passed, to authorize any person they might choose, to sign the instruments, to manifest their intention of completing the act. This was not properly an exercise of power, but was simply a mode of manifesting the fact that the power had been exercised by the board. We are, for these reasons, of the opinion that this objection is not well taken.

It is also insisted, that this question, whether the county would subscribe to these roads, was improperly submitted to a vote of the county. As submitted, the electors were required to vote for or against the subscription, or a gross sum, to be taken in equal parts in two different roads. We have held, on an application to restrain a county from issuing bonds, that it is illegal to submit two separate propositions in such a manner as that each may not be voted upon separately. *Fulton County* v. *Miss. & Wabash R.R.*, 21 Ill. 373. It was also held, on an application for a *mandamus*, to compel the issuing of bonds, to pay for a subscription thus voted, that the relief could not be granted. *The People ex rel.* v. *The County of Tazewell*, 22 Ill. 147. It is true, in this latter case, that was only one of several grounds, upon which the application was refused, but the doctrine announced was recognized.

The case under consideration presents the question, whether bonds issued under such a vote, and in the hands of innocent holders, are void, or are only voidable, and may be ratified by subsequent acts of the county, acting through its constituted authorities. And if capable of being ratified, whether any act has been done, having that effect. If an election were held without warrant of law, or if it were ordered by a person or tribunal having no authority, there could be no doubt that the whole proceeding would be absolutely void. Such an election, and every subsequent step, would be unauthorized and void, and therefore incapable of ratification by the county authorities. But an election held under the authority of an order by the proper authorities, and in the main conforming to the requirements of the statute, but wanting in some particular not essential to the power to hold an election, and acquiesced in by the people, and approved by their agents, the county authorities, would render bonds thus issued binding, when in the hands of innocent holders.

The objection to submitting two separate propositions, to subscribe for stock, in such a manner as the voter has no choice, but to vote for or against both propositions, may operate as a fraud upon the voters of the county. And when the issue of the bonds is resisted, they cannot be executed and delivered. In this case the election was ordered by the proper tribunal, it was held at the time and in the manner required by law, and for aught that appears, was in all things, except the submission of the proposition to take stock to the amount of the gross sum in the two roads, strictly legal. The people acquiesced in the election, the board of supervisors issued and delivered the bonds, and afterwards paid some installments of interest. Now in this case there was no want

of authority to order the election, but simply an erroneous mode of submitting the questions. And we have no hesitation in saying, that it was such a deviation from the correct mode as may be rendered valid by subsequent acts, so as to protect the rights of third parties, which may have been subsequently acquired. Had the proceedings been instituted by any citizen of the county, to restrain the issue of these bonds, the relief would have been granted. But when they have been issued, and purchased in market, and have passed into the hands of *bona fide* holders, good faith, justice, and every principle of fairness, require that these bonds should not be held invalid, for any but the most weighty reasons.

In the case of *Johnson* v. *Stark County*, 24 Ill. 75, this court held, that if the irregularity was only such as to avoid the liability, upon the grounds of a non-compliance with the law in holding the election, it must be insisted upon before the rights of third persons have intervened. That when such are the grounds of objection, the want of action by the tax-payer to restrain their being issued, and a ratification by the county authorities, either in express terms or by acts of recognition of their validity, waives the right to object against the interests of third persons. In this case, the citizens of the county acquiesced in the issue and sale of the bonds, and the supervisors levied and collected taxes, with which several installments of interest were paid, before any resistance was made to the legality of the bonds. These acts clearly evince a recognition of their validity on the part of the county.

This case does not, as it seemed to be supposed, fall within the principle announced in the case of *Schuyler County* v. *The People*, 25 Ill. 185, as in that case, there was no authority to order the election by the body assuming the act. But this irregularity only being such as would prevent the bonds from being issued, and not sufficient to render them void, when thrown into the market, we must hold that these bonds are valid, and binding upon the county. And that the court below erred in rendering judgment in favor of the defendants, which is reversed, and the cause remanded.

*Judgment reversed.*