## SUPERVISORS OF MARSHALL COUNTY
*v.*
## WASHINGTON E. COOK.

1. SUBSCRIPTION TO RAILROADS BY MUNICIPAL CORPORATIONS, *and the issue of bonds therefor—of the election by a county under act of* 1849, *by whom it must be ordered.* The power of a county to make a subscription to a railroad, depends upon the act of 1849, which requires, as a prerequisite to the exercise of such power, that the County Court shall call an election to be held on that subject; and where a county is under township organization, the

powers and duties of the County Court in that regard devolve exclusively upon the Board of Supervisors of the county.

2. SAME—*where election is called by the wrong authority, the bonds are void.* So if the election is called by the County Court, under such circumstances, it is without authority of law, and a subscription to a railroad, and bonds issued thereon by the Board of Supervisors, in pursuance of such an election, will be absolutely void.

3. SAME—*no matter if a majority voted for the subscription.* The fact that a majority of the votes at such an election were in favor of the subscription, will not relieve it of its illegality. Majorities are as powerless to divest a person of his property as are minorities. That can be done by neither, except in the manner prescribed by law. The election being called without authority, the vote would confer no power.

4. SAME—*in whose hands the bonds would be void.* As between the county and the first holder, or in the hands of a person holding such bonds with notice that they were issued without authority, there is no doubt that they are absolutely void.

5. SAME—*how such notice is afforded.* And all persons dealing in securities issued by a municipal corporation are chargeable with notice of a want of authority in their creation.

6. SAME—*whether a holder before maturity is protected by the negotiable character of the instrument.* Nor will the negotiable character of such securities protect a purchaser before maturity against the consequences of a want of authority to issue them.

7. SAME—*of the subsequent ratification of bonds illegally issued.* Bonds issued without authority being void, the mere levy of taxes and payment of interest on them will not render them valid.

8. And herein the distinction is to be taken between the want of power in public officers to perform an act, and a case where, having the power, they execute it defectively. In the former case, acquiescence, and treating it as having been performed in pursuance of authority, does not render the act valid; while in the latter case, the defects may be of such character that the act might become valid and binding.

APPEAL from the Circuit Court of Marshall county; the Hon. SAMUEL L. RICHMOND, Judge, presiding.

This was an action of assumpsit, brought to the January term, 1864, of the court below, by Washington E. Cook, against the Board of Supervisors of Marshall county, for the recovery of the interest due by a coupon attached to a bond issued by

the defendants upon their subscription to the capital stock of a railroad company.

The case is fully stated in the opinion of the court.

Mr. S. L. RICHMOND, and Messrs. BANGS & SHAW, for the appellants.

Messrs. BURNS & CUMMINS, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, brought for the recovery of the interest due by a coupon attached to a bond issued by the Board of Supervisors of Marshall county in payment of subscription to the capital stock of a railroad company. As a defence, the county interposed a plea that on the 28th day of February, 1853, the County Court ordered an election to ascertain whether the county should subscribe one hundred thousand dollars to the capital stock of the Western Air Line Railroad Company. That when the election was held, the county was acting under township organization. That afterwards, and without any further action in holding an election, the Board of Supervisors passed an order that the county subscribe that sum, which subscription was subsequently made. Afterwards, at the September session, the Board ordered that the bonds of the county issue to the road, in such sums as the company might require, but not less than one thousand dollars each, payable in twenty years, bearing six per cent. interest, payable semi-annually. That the bonds be signed by the chairman of the Board, and authenticated by the county seal. That interest coupons be attached and the bonds be delivered to the company, when it should indemnify the county against loss, by transmitting the principal and interest to the place of payment.

The plea avers that the bonds were issued in pursuance of the order, but by no other authority. To this plea a replica-

tion was filed. It does not deny any averment in the plea. It avers that this and others bonds were endorsed and delivered on the day they were issued to plaintiff. That ever since the bonds were issued, the county has paid interest until the instalment falling due on this coupon. That for the purpose of paying the interest, the county has each year levied and collected of the tax payers of the county six thousand dollars, which has been applied semi-annually in the payment of the interest on these bonds. That certificates of stock were delivered to the county for the amount of the subscription, which are still held by the county. That the county has participated in the election of officers of the road. That the bonds and coupons were transferred before maturity for value, without any notice that the election had been ordered or held under an order of the County Court, further than the constructive notice, if any such could be imposed, by the records of the County Court and the Board of Supervisors. To this replication a demurrer was filed, which was overruled, and a judgment rendered for $30, the amount of the coupon, against the county.

It is virtually admitted that the bond and coupon were irregularly issued; but it is insisted that the subsequent acts of the county render them valid and obligatory upon the county. Also, having been negotiated for a valuable consideration before their maturity, without any other notice than such as the law charges, the county cannot interpose a defence to them in the hands of such a holder. The first of these questions is one of power. And it depends upon the fourth section of the act of 1849, (Scates' Comp. 950), which declares that no subscription or purchase of stock shall be made, or bonds issued, by any county or city, under the provisions of the act, creating a debt for the payment of such subscription, unless a majority of the qualified voters of such county or city shall vote for the same. It requires a notice of thirty days, giving the time of holding the election, and requiring them to vote for or against the subscription.

The fifth clause of the fourth section of article sixteen of the township organization law, (Scates' Comp. 337), declares that the Board of Supervisors shall perform all other duties not inconsistent with the act, which was required or enjoined upon the County Courts by any law of the State. Under this provision, which was in force at the time these bonds were issued, the Board of Supervisors succeeded to all the powers and duties of the county court, and it became their duty to call elections to ascertain whether the county should subscribe stock to a railroad company and issue bonds in payment of the same. *Prettyman* v. *Tazewell County*, 19 Ill. 406. The Board having succeeded to this power, the County Courts of the various counties acting under township organization, ceased to have the power to call such elections.

From these provisions it is manifest, that these bonds were issued without such an election as the law contemplates. Nor can an election ordered and held without authority of law be held to answer the requirements of the statute. This is a question of authority and its legal exercise. The statute has expressly declared that the bonds shall not issue unless in pursuance of authority conferred by the vote of a majority in favor of such subscription, at an election called in the mode pointed out by the act. The act has prescribed the manner in which the authority shall be acquired, and declares that bonds shall not issue except in that manner.

The provision of the township organization law operated as an amendment to the law authorizing subscriptions by counties and cities. And when the duty devolved upon the Board of Supervisors, of calling the election, it also prohibited them from issuing the bonds until an election was called and resulted in favor of subscription precisely as it did the County Courts. In counties not acting under township organization, no person can suppose that an election called by the sheriff or a justice of the peace, would confer any power on the County Courts to issue such bonds, and for the reason that such an election would be unwarranted, and would for that reason confer no

power. A legally ordered election is, by the law, made an essential prerequisite to the exercise of the power. And action by the county authorities without performing such an act, is unwarranted, and not only so, but is prohibited.

The provision requiring the election, and prohibiting the bonds from being issued until the question is passed upon and authorized by a vote, was no doubt designed to protect the county from improvident action, and is salutary and proper in its operation. It has been held that in the absence of such authority conferred upon the county agents by an election properly called, they will not be compelled to issue bonds. *Schuyler County* v. *The People*, 25 Ill. 181 ; *Supervisors of Hancock County* v. *Clark*, 27 Ill. 305 ; *Fulton County* v. *Mississippi and Wabash Railroad*, 21 Ill. 373, and *The People* v. *Tazewell County*, 22 Ill. 147. And as between the county and the first holder, or in the hands of a person holding such bonds with notice that they were issued without authority, there can be no doubt that they are absolutely void.

Political corporations, in their organization and purposes, are essentially different from private corporations. The former are created to aid in the government of the people, the latter to promote trade, manufactures, and a variety of other interests. They are usually endowed with all the powers and rights of an individual so far as they can be conferred. And the power to contract debts, and to issue evidences of the same, is an incident usually attending their creation. When authorized to perform an act, unless restrained by their charter, they may employ the means and perform the act in the same manner that might be done by a private individual. This is necessarily so, to effectuate the purpose of their foundation with most private corporations.

Municipal corporations, however, being created for purposes of government, and authorized as it were to exercise to a limited extent a portion of the power of the State government, have always been held to act strictly within their charter. It is to them their fundamental law, and their power is only

co-extensive with the power granted. Not being essential to
the purposes and object of their creation, without an express
grant of power for the purpose, they have no authority to con-
tract debts, binding upon the body or individuals residing
within their limits. Such a power being unusual when they
are created, and usually being conferred, if at all, by special
enactment, and all persons being familiar with the fact, it is
but natural that those who deal with them or in their obliga-
tions, should see to it that the body possesses the power to
bind itself for their payment. On the other hand, the object
of private corporations usually renders it necessary that they
should transact such business as may involve the necessity of
incurring debts.

Another broad distinction exists between the two classes of
corporations. The business and proceedings of a private
corporation are not public, whilst those of municipal corpora-
tions are open to the examination of the public. All of their
proceedings are enrolled and become a matter of public record,
open to the inspection of all persons. On the other hand, the
journal of the proceedings of a private corporation is not
accessible to the public, or to any one but the members of the
body. It then follows, that persons dealing with municipal
corporations have the right to examine and see whether all the
steps required by their charter have been taken. It is other-
wise with private corporations. Those dealing with them can
only examine their charter, and if it is found that the body
had, under any circumstances, power to create the indebted-
ness, the holder will be protected, unless it appears that he was
informed that it was in violation of their charter. But with
municipal bodies, whose records are open to examination of
all, there is not the same reason to protect a holder, as he may
fully inform himself whether their action is warranted.

That such a body may create a debt binding upon it, there
can be no question, simply by complying with substantial
requirements of their charter, nor will slight or immaterial
deviations from the mode prescribed invalidate such securities

in the hands of innocent holders for a valuable consideration. Such was the rule announced in *Johnson* v. *Stark County*, 24 Ill. 75 ; *Prettyman* v. *Tazewell County*, 19 Ill. 406. But on the other hand, if the body assuming to act has no legal authority to create the debt, or if they exceed their authority, or omit some essential prerequisite, the bonds are a nullity. *Schuyler County* v. *The People*, 25 Ill. 181 ; *Supervisors of Hancock County* v. *Clark*, 27 Ill. 305. And it is upon the principle that there is a wide difference between an act performed without authority, or in violation of law, and an act defectively performed under authority. In the former case the act is absolutely void, whilst in the latter it may become binding by ratification or by mere acquiescence.

As a rule, if not uniform, of very general application, persons dealing with individuals claiming to act for another, or with the officers of the law, (and the officers of cities and counties are of that character), he must see that they have power to act. A person acting under a special authority cannot bind his principal when he exceeds it. A person dealing with one assuming to be the agent of another, must, to protect himself, know that the agent has power to act in the premises. He must be able to show that the agent had authority, or he can acquire no rights binding upon the principal.

In case of public officers, from the highest to the lowest, they must act within the scope of their authority, or their acts will be void. And courts, to render their judgments and decrees binding, must have jurisdiction of the subject matter and of the parties. And the power in all such cases is derived from the law. But having the power, an injudicious or even an erroneous exercise of the authority does not render the act void, but merely voidable. Where a person purchases property at a sheriff's or master's sale, to render his purchase availing, he must show that there was a valid and binding judgment or decree, and an execution in the one case, and an order of sale in the other. It is not sufficient to show an execution without a judgment, or even a judgment, where the court had no

jurisdiction of the subject of litigation or of the parties. It is not sufficient that it appears that the officer had, under any circumstances, power to perform "the act, but it must appear that he possessed the power in the case in which he performed the act. Nor can the question of the *bona fides* of the transaction be considered. In such cases the bidder purchases at his peril, and so of his assigns. It is a question simply of power and not of good faith. The maxim *caveat emptor* applies to to the acts of public officers.

It would, therefore, appear that the county agents only acquire jurisdiction or power to act in the mode prescribed by the law. And the law has not only required that an election shall be held resulting in favor of a subscription and the issuing of bonds; to confer the power, but has expressly prohibited them from acting in the absence of such authority. And we have seen that the Board of Supervisors were alone authorized to call the election, and that the County Court acted without authority. And in doing so, the election conferred no more jurisdiction on the Board of Supervisors than if it had been ordered by the sheriff or a constable of the county. *Schuyler County* v. *The People*, 25 Ill. 181. In this case all of the avenues to information were open to the purchaser. The authority to issue bonds is derived from a public law, which he no doubt examined, and whether he did or not, he was bound to know its requirements. From it he saw that the Board had no power to issue these bonds until an election had been ordered by them and resulted in favor of their being issued. Such an order would, of course, appear upon the public record of their proceedings, to which he had access, as fully as the person proposing to purchase at a sheriff's sale has to the record of the judgment under which the sale is proposed to be made. Nor is it harder to require the purchaser of a bond to examine the record to ascertain whether the Board had jurisdiction to act, than to require of the purchaser to ascertain whether the court had jurisdiction to render the judgment.

After a careful review of all the reasons which induced the decisions in the cases of *Schuyler County* v. *The People*, and *Hancock County* v. *Clark*, we have discovered no reason to change or modify the conclusion at which we then arrived. In the first of these cases, the Board of Supervisors had called the election and issued the bonds, when the law under which they were acting only authorized the County Court to call it, and issue the bonds, and it was held that the bonds were absolutely void, even in the hands of Farwell, who, for aught that appears, acquired them in the due course of business and for a valuable consideration. In the latter of these cases we said, " if an election were held without warrant of law, or if it were ordered by a person or tribunal having no authority, there could be no doubt that the whole proceeding would be absolutely void. Such an election, and every subsequent step, would be unauthorized and void, and therefore incapable of ratification by the county authorities. But an election held under authority of an order of the proper authorities, and in the main conforming to the requirements of the statute, but wanting in some particular, not essential to the power to hold such an election, and acquiesced in by the people, and approved by their agents, the county authorities, would render bonds thus issued binding, when in the hands of innocent holders."

Whatever may be held in other States, under statutes differing, no doubt, in some particulars from ours, we feel compelled to hold that an election ordered and held by the body or tribunal authorized by the statute, is essential to the exercise of the power. It might be different if the Legislature had not prohibited such bonds from being issued until the tribunal had called an election which had resulted in favor of issuing such bonds. To hold otherwise would be to violate a positive requirement of the statute. It would be to set at defiance the legislative will, constitutionally declared, and exercised for the protection of the people who are to be burthened with the debt. To hold bonds issued without an election or under an election unauthorized by law, is to say that the express will of

the Legislature shall not be binding, and that acts in violation of express provisions of the statute shall be as effectual as if done strictly in compliance with its requirements.

The holder was dealing in instruments issued by a municipal corporation, and he no doubt looked to the law for their authority, and if so, he saw that they were required to have the election held, and were prohibited from issuing bonds until such a step had been taken. Finding the law required such an election, there was no hardship in ascertaining, by the records of the county, whether the election had been ordered and held by the Board of Supervisors. In the absence of such an act there was the want of power to issue the bonds, and we have no hesitation in saying that when so issued they are void in whosesoever hands they may be found.

It is a familiar rule that a note given or contract executed for an immoral or an illegal consideration, is held to be void in any person's hands. This case, then, presents no greater hardship than a case of that character. It may be said, that in the case of *Johnson* v. *Stark County*, the election was held in the same manner as in this case. If such was the fact, it is believed that the question was not argued, and it was not discussed in the opinion of the court. Nor did the court intend or suppose that we were holding that bonds issued under such an election were valid.

It is, however, insisted, that these instruments being negotiable, a purchaser before maturity is protected unless he is chargeable with actual notice. Without stopping to inquire whether all of the citizens of the municipality would not be chargeable with notice of all defects in exercising the power, it is only necessary to say that such is the general rule, subject to some important exceptions. The term negotiable means saleable or transferable—that which may be endorsed or assigned so as to vest the legal title to a chose in action in the person to whom it is transferred, so that he may enforce the payment in his own name. Usually, the negotiation of such instruments before maturity, cuts off all defences. But

instruments prohibited by law, instruments negotiated after maturity, and instruments given for a consideration, *malum in se*, are not embraced in the protection. Thus it will be seen that an instrument may be negotiable and yet not protected from a defence in the hands of an innocent holder. It does not necessarily follow that because an instrument is negotiable, therefore an innocent holder will always be protected. Almost every description of agreement and contract may be negotiated in equity, and still all defences may be interposed in such cases. In the case of *Johnson* v. *Stark County*, we said that coupons annexed to such bonds were negotiable by delivery, but we did not say, nor did we intend to say, every defence was thereby cut off, when the holder might sue. We only held that by sale and delivery the legal title to the instrument was transferred to the holder, and that he might sue in his own name. That was the question presented and decided.

A forged note, a note executed by a person assuming without authority to act as the agent of another, and a note altered in a material part, although they may be assigned or negotiated, are not by that means rendered binding, but the same defence may be made in the hands of the assignee as in the hands of the original holder. Neither does the negotiation of a note with notice of the defence, or of such circumstances as charge the assignee, cut off a defence in his hands.

When we come to see the cases reported in Wallace's Reports, we find the Supreme Court of the United States have not gone so far as we had previously supposed. In the case of *Mercer County* v. *Hackett*, 1 Wallace, 83, it was held that slight and immaterial omissions in ordering the bonds to issue, will not render them invalid in the hands of an innocent holder. In that case the recommendation was by the grand jury, the body authorized by law to make it, but they did not make it in the precise language of the law, but it was substantially good. If the recommendation had been made by the petit jury, it would have presented a very different question, and one more like the one under consideration than the

one discussed in that case. We do not see that the court could have done otherwise than decide as they did. It was not a question of power to act, but whether the action, defective it might be, was still in pursuance of the power.

It is supposed that the case of *Gelpcke* v. *The City of Dubuque*, 1 Wallace 175, is in conflict with the views here expressed. It will be observed, however, that so far as the record discloses in that case, the law authorizing the bonds to issue had been strictly observed in every particular before they were issued. A curative act had likewise been passed by the Legislature, declaring the bonds valid and binding. That case does not, like the present, depend upon the power of the body issuing them, to act, but upon other and different questions, the principal one of which was the constitutionality of the law. Hence, that case and this differ essentially in the questions presented and discussed.

It is true the court use broad and comprehensive language. They say "when a corporation has the power, under any circumstances, to issue negotiable securities, the *bona fide* holder has a right to presume they were issued under the circumstances which gave the requisite authority, and they are no more liable to be impeached for any infirmity in the hands of such holder than any other commercial paper. If there were any irregularity in taking the votes of the electors, or otherwise, in issuing the bonds, it is remedied by the curative provisions of the act of January 28th, 1857." The court, however, do not intimate that such instruments, issued without power, would be protected in the hands of any kind of a holder. The court proceed upon the ground that the persons issuing the bonds did so in the exercise of a power. And that if there was a defective exercise of the power, the irregularity had been cured by the act of the Legislature. There is no intimation that bonds void in their inception— issued in direct violation of law—would be protected. Nor do we believe that court will so hold if the question should ever be presented for their determination.

The language employed · by the court does not bear the construction, that simply because the instrument bears the form of negotiable paper, that therefore the holder, although *bona fide*, is protected. No rule is better recognized in the commercial world than that the forgery of the drawer or indorser's name, does not protect the holder, however innocent he may be. Nor do we understand, that a note declared by the statute to be void, will in the hands of an innocent holder, be valid and binding, otherwise the statute would be wholly inoperative.

The principle that the holder of an instrument prohibited by statute, although negotiated before its maturity, is not protected, is well illustrated in the case of *Bailoy* v. *Taber*, 5 Mass. 285. In that case the statute had declared all notes, bills, &c., of a particular denomination issued by a banker after a specified day should be void. It appeared that the notes were issued after that date, but were ante-dated, so as to appear to have been legally issued; yet the court held they could not be enforced in the hands of an innocent holder. The court say that it is not altogether certain that receivers of such instruments are entirely free· from blame, although not privy to the making or ante-dating of them. The laws of the Government, the court say, are presumed to be known to all of the citizens, and "if the notes were in fact made or issued after they were declared void by statute, and after a penalty was attached to passing them, although no penalty is expressly enacted against the receiver, yet the act of receiving them was necessary to enable the offender to pass them. To authorize the holder to maintain a suit and recover judgment on notes of this description so situated, when the Legislature has declared them void, would be effectually to annul an act, of the wisdom and policy of which the Legislature alone had the right to judge; so in the case under consideration, to permit a recovery would be to defeat the will of the Legislature expressed in the clearest manner, that bonds shall not be issued until authorized by an election called in the mode prescribed.

Official acts derive their binding force alone from the law.

5—38TH ILL.

The uttering of county bonds involves the necessity of levying taxes for their payment, and to that extent deprives the citizen of his property. Under the fundamental principles of our Government, that can not be done except by authority of law; nor is it any answer to say the election resulted in a majority in favor of issuing the bonds, as majorities are as powerless to divest a person of his property as are minorities. That can by either, only be done in the manner prescribed by law, and the election being illegally called, the vote failed to confer the power.

If, then, the bonds were issued without authority, they were void, and if void, the mere levy of taxes and payment of interest could not render them valid. In the case of *Schuyler County* v. *Farwell*, 25 Ill. 181, the Board of Supervisors had levied and collected taxes for the payment of interest, several installments of which had been paid, and still it was held that the bonds being void, the holder could not recover. We, in this case, make the distinction between the want of power in public officers to perform an act, and a case where they, having power, execute it defectively. In the former case acquiescence and treating it as having been performed in pursuance of authority, does not render the act valid, whilst in the latter case the defects may be of such a character that the acts might become valid and binding. We are, therefore, compelled to hold these bonds to be invalid and incapable of enforcement on the grounds set up in the pleadings. The plea presented a defence and the replication was no answer to it, and the court erred in overruling the demurrer.

The judgment of the court below must, therefore, be reversed and the cause remanded.

*Judgment reversed.*