# CASES

# APPELLATE COURTS OF ILLINOIS.

FOURTH DISTRICT—JULY TERM, 1878.

## THE COUNTY OF RICHLAND ET AL.
### v.
## THE PEOPLE EX REL.

1. SUBSCRIPTION TO RAILROAD—ELECTION CALLED BY WRONG AUTHOR-ITY.—Where the act authorizing a municipal corporation to make subscriptions in aid of a railroad provides that the election shall be called by the County Court, an election called by a wrong authority, as by the Board of Supervisors, is void and confers no authority to make such subscription. The so-called vote is an idle form, and persons opposed to the subscription are under no obligation to vote against it, because they have a right to regard the entire proceeding as a nullity.

2. ADOPTION OF TOWNSHIP ORGANIZATION—DOES NOT CHANGE POWER.—The fact that upon the adoption of township organization the law requires that acts formerly to be done by the County Court shall be performed by the Board of Supervisors, cannot affect this case, because the enabling act in this case was passed subsequent to the adoption of township organization, and it will be presumed that the Legislature had knowledge of that fact, and intended to confer the power to act upon the County Court instead of upon the Board of Supervisors.

3. CURATIVE ACT—CANNOT LEGALIZE A VOID ELECTION.—The election being void, a subsequent act of the Legislature legalizing the former vote is of no effect. It is the settled doctrine of this State that under the Constitution of 1848, the Legislature had no power to enact a law rendering a void election and subscription for corporate purposes valid.

4. EFFECT OF CURATIVE ACT—REVOCATION OF POWER.—At the most the curative act merely granted power to the county to subscribe, but left it

(210)

optional with the corporate authorities to subscribe or not, as the corporate will sh uld dictate.  After the curative act, the Board of Supervisors made no further ord rs in regard to the subscription until after the present Constitution went into effect.  There was, then, no binding contract of subscription, and the subscription already made not being under existing laws by a vote of the people, it was then too late.  The power itself was revoked by the Constitution.

Error to the Circuit Court of Lawrence county;  the Hon. James C. Allen, Judge, presiding.

Mr. E. Wilson, Mr. J. M. Longenecker and Mr. M. Millard, for plaintiffs in error; that statutes granting special powers are to be strictly pursued, cited Harding v. R. R. I. & St. L. R. R. Co. 65 Ill. 90;  Schuyler Co. v. The People, 25 Ill. 181;  Clarke, v. Hancock Co. 27 Ill. 305;  Marshall Co. v. Cook, 38 Ill. 44;  Chestnutwood et al. v. Hood et al. 68 Ill. 139.

. The election was called by the wrong authority and is void: Schuyler Co. v. The People, 25 Ill. 181;  Marshall Co. v Cook, 38 Ill. 44;  Force et al. v. Batavia, 61 Ill. 99;  Clarke v. Hancock Co. 27 Ill. 305;  Harding v. R. R. I. & St. L. R. R. Co. 65 Ill. 90;  People v. Town of Santa Anna, 67 Ill. 57;  People v. Logan Co. 63 Ill. 374.

The court is bound to take judicial notice that at the time the act was passed the county was under township organization: County of Rock Island v. Steele, 31 Ill. 543;  Schuyler Co. v. The People, 25 Ill. 181.

The election was to be held in the same manner as elections for state and county officers, hence registration was indispensable: People ex rel. v. Town of Santa Anna, 67 Ill. 57;  People ex rel. v. Town of Laenna, 67 Ill. 65.

Notices for the election must be signed by the proper officer:  Force et al. v. Batavia, 61 Ill. 99;  Harding v. R. R. I. & St. L. R. R. Co. 65 Ill. 90;  Marshall v. Silliman, 61 Ill. 218.

If the first election was a proper exercise of authority, then the power was exhausted, and the subsequent vote wholly unauthorized:  Ill. Midland R. R. Co. v. Supervisors, etc. 9 Chicago Legal News, 364.

The legislature cannot by a subsequent enactment legalize the void election: Marshall v. Silliman, 61 Ill. 218;  Wiley v.

Silliman, 62 Ill. 170; Town, etc. v. Treas. Iroquois Co. 9 Chicago Legal News, 353; Town of Elmwood v. Marcy, 2 Otto, 289.

Nor can the county authorities ratify such proceedings, or the taxpayers be estopped: Ryan v. Lynch, 68 Ill. 160; People ex rel. v. Town of Santa Anna, 67 Ill. 57.

Mr. FREDERICK ULLMAN, for defendant in error; That on the change to township organization the board of supervisors were authorized to call the election, cited Prettyman v. Supervisors Tazewell Co. 19 Ill. 406; Marshall Co. v. Cook, 38 Ill. 44.

An amendment to a statute will be construed as if it had been originally copied into the statute: Holbrook v. Nichol, 36 Ill. 161.

Mere irregularities in conducting the election will not relieve the county from liability: Hancock Co. v. Clarke, 27 Ill. 305.

The action of the county was legalized by a subsequent act of the legislature: Cowgill v. Long, 15 Ill. 202; Ryan v. Lynch, 68 Ill. 160; Burr v. Carbondale, 76 Ill. 455.

Registration was unnecessary: People v. P. L. & D. R. R. Co. 63 Ill. 375.

BAKER, J.   In this case is involved the question of the liability of the county of Richland for an alleged subscription of $150,000 to the capital stock of the Grayville & Mattoon Railroad Company; that it is claimed was authorized by a vote of the people of the county at an election held on the 7th day of April, 1868, and made by an order of the Board of Supervisors of the county, on the 11th day of December, 1868.

It is evident that such subscription cannot be sustained under the general act of November 6th, 1849, as under said act subscriptions could not exceed the sum of $100,000: Laws 2nd Sess. 1849, 28.

We must look, therefore, for power to make said subscription either to the act approved March 1, 1867, amendatory of the act incorporating said railroad company, or to the provisions of the curative act of April 9, 1869, P. L. 1867, Vol. 2, 736; P. L. 1869, Vol. 2, 360.

The second section of the act of March 1, 1867, is as follows:

"Section 2.  Cities, towns and counties shall be authorized to subscribe for stock in the said company, in like manner and with like effect as is provided in and by the act entitled 'An act to provide a general system of railroad corporations, approved November 5, 1849,' and the several acts amendatory thereof. Provided, that the County Court of any county may, having first submitted the question of subscription to the vote of the people of the county, subscribe for stock in said company, payable in lands, or town or city lots, to be taken upon such terms and conditions, and be conveyed in such manner as the said court and the said company may agree upon, and that the said subscription shall not exceed two hundred thousand dollars; and the said subscription may be made partly payable in lands, and partly payable in money, as the said court and the said company may agree."

The body of this section, so far as the county is concerned, did nothing more than to expressly authorize it to do that which it was already fully authorized to do under the general law of 1849.  If the section had stopped right there and had contained no further provision or proviso, the Board of Supervisors alone would have been authorized to call the election and the amount voted could not have exceeded $100,000.  As the section stands with the proviso, the board of supervisors, and probably they alone, had authority, in so far as any power predicated upon the body of the section is involved, to call an election and subscribe. Prettyman v. Supervisors of Tazewell County, 19 Ill. 406 ; Supervisors of Marshall Co. v. Cook, 33 Ill. 44.  Under the body of this section the powers of the Board of Supervisors were no way changed from what they were under the law of 1849, and they had no more authority to call an election for a subscription of $150,000 under the body of this section than they had under the general law.

We do not understand the *proviso* to this second section, to confer any additional power or authority whatever upon the Board of Supervisors.  A *proviso* is something engrafted upon a preceding enactment, and is legitimately used for the purpose of taking special cases out of the general enactments, and

providing specially for them. Potter's Dwarris, 118. Most usually a proviso has the effect of limiting, and not of enlarging the body of the act; but this may be otherwise. Suppose the legislature had provided in express terms that the Supervisors of their own motion, and without any vote of the people, might subscribe not exceeding $100,000 to the capital stock of a railroad company, and at the same time had attached a proviso to the act providing that in case the proposition to subscribe was first submitted to a vote of the people, then, in the event such subscription was authorized by such vote, the subscription might be for some larger sum. In such a case the evident effect of the proviso would be to enlarge, at least so far as amount is concerned, the body of the act.

So, by the proviso in this section, we understand the body of the act to be enlarged, and the legislature to intend that the County Court, as distinguished from the Board of Supervisors, may submit to the vote of the people a proposition to subscribe for stock in said company a sum that might be larger than $100,000, but not exceeding $200,000, said subscription to be payable in lands or town or city lots, or partly in lands and partly in money, upon such terms and conditions as the County Court and said company might agree. As to whether the power to call elections and make subscriptions vested in the Board of Supervisors under the act of 1849, and recognized in the body of said second section of the act of 1867, and the power vested in the County Court by the proviso to said second section are cumulative, and might have been concurrently exercised, we are not called upon to determine.

The only power granted to call an election for a subscription in excess of $100,000, is vested by the terms of this proviso in the County Court. At the time that this act was passed the county of Richland was under township organization, and this Court is bound to take judicial notice of that fact. County of Rock Island v. The State Bank, 31 Ill. 343. And it must be presumed, also, that the legislature knew that fact, and shaped the act of 1867 accordingly. Supervisors of Schuyler Co. v. The People, 25 Ill. 181.

It is provided in this second section that "the County Court"

having first submitted the question to a vote of the people, might subscribe for stock in said company upon certain terms, "as the said court and the said company " might agree upon, and that said subscription might be made partly payable in lands and partly in money," as the said court and the said company might agree. It is provided in section three of the same act that "any County Court subscribing for stock in said company shall be authorized to issue bonds in payment for the same, in the name of the county;" and it is provided in section four, that the county clerk shall from year to year extend a tax "sufficient to pay the interest accruing upon the bonds so issued by the County Court." It is a well settled rule of construction that statutes extending the powers of corporations, or increasing the burdens of taxation, must be strictly construed. Smith's Com. 818; Chestnutwood v. Hood, 68 Ill. 132.

We think it clear that this case falls within the rule announced in Supervisors of Schuyler Co. v. The People, *supra.* In that case all the acts required by the two laws then in question were required to be done by the County Court, and they were in fact done by the Board of Supervisors. In this case all the acts required to be done by the proviso to section two, and by the subsequent section, are required to be done by the County Court, and in so far as they have been done at all, have been done by the Board of Supervisors. In that case as in this, the legislative enactments were subsequent to the adoption of township organization. In that case it was presumed that the legislature knew that the county had adopted township organization, and that it intended to confer the power upon the County Court instead of the Board of Supervisors. In this case, the same presumptions must prevail.

It is true that, under the law of 1849, the County Court was required to call the election and make the subscription; also that in Prettyman v. Supervisors of Tazewell Co., *supra*, it was expressly held that the effect of the adoption of township organization by any county, upon this very law of 1849, was to transfer to the Board of Supervisors the duty and power of submitting to the people the question of subscribing for stock in a railroad company; and also that it was decided in the

Supervisors of Marshall Co. v. Cook, *supra*, that an election held under the provisions of the law of 1849, called by the County Court after the county had adopted township organization, was without authority of law, and that a subscription of stock based on such election was absolutely void. But these decisions are based altogether upon the law of 1849, and proceed upon the ground that the fifth clause of the fourth section of article sixteen of the township organization law of 1851, which requires the Board of Supervisors to perform all other unspecified duties not inconsistent with the act, which were required or enjoined upon the county courts by any law of the State, operated as an amendment, *pro tanto*, to the law of 1849. G. L. 1851, 51. An amendment to a statute will be construed to operate precisely as though it had been originally copied into the statute, so far as regards any action had after the amendment is in force. See Holbrook v. Nichol, 36 Ill. 167. The act now under consideration, and the acts before the court in the Schuyler county case, are alike private acts, and in no proper sense to be regarded as amendments to the general law of 1849. It is suggested that the Prettyman case was decided at the April term, 1858, and the Marshall county case at the April term, 1865, of the Supreme Court, and it is urged that therefore the decisions in said cases enter into the construction of this private act of 1867. Said cases have nothing at all to do with the construction of the proviso now in question, because the principle therein announced has no application here, the premises being essentially different. Chief Justice Caton said, in Schuyler Co. v. The People, "there has been no subsequent law giving the least color to say that the power has been transferred from the County Court, where it was expressly vested, to the Board of Supervisors." In the two cases referred to by defendant in error, this element of a subsequent law to transfer the power was present, and was the controlling and efficacious element, while in this case, that element is altogether wanting. It might, with much propriety, be said in answer to the argument of defendant in error in that behalf, that the decision of the court in the Schuyler Co. case, made in 1860, enters into the construction of this act of 1867,

and indicates clearly that it was the legislative intent that the County Court and not the Board of Supervisors, should be clothed with the powers that are now the subject of examination.

This power to submit the question of a subscription in excess of $100,000, and subscribe the same, was vested in express terms in the County Court, and, as we have seen, the Board of Supervisors had no authority whatever to call an election for a subscription of $150,000. Then the election at issue was called by a wrong authority, and the whole proceeding is void. Clark v. Supervisors of Hancock Co. 27 Ill. 305; Supervisors of Schuyler Co. v. The People, *supra;* Marshall Co. v. Cook, *supra;* Force v. Town of Batavia, 61 Ill. 99; Harding v. R. R. I. & St. L. R. R. Co. 65 Ill. 218. The so-called vote was an idle form, and persons opposed to the subscription were under no necessity or obligation to vote against it, because they had a right to regard the entire proceeding as a nullity.

The next point that demands our attention is as to the effect of the third section of the act approved April 9, 1869, upon this alleged subscription. P. L. 1869, Vol. 3, 360. That section is as follows: " All elections held for the purpose of voting said stock, and the manner in which said stock was voted, are hereby legalized in all respects, and said stock to be subscribed in the manner the same was voted."

Under the Constitution of 1848, it was entirely competent for the legislature to bestow directly upon the county, and without requiring that there should first be a vote of the people, the power to subscribe for stock in railroad companies. President and Trustees of Town of Keithsburgh v. Frick, 34 Ill. 405. But in such case the mere granting the power to subscribe would not be a subscription, and the proper corporate authorities would have the election to avail themselves of the power granted, or not, just as they saw fit; and there would be nothing binding upon the county until such corporate authorities had actually made a subscription under the power. It is the settled doctrine in this State, that under the Constitution of 1848, the legislature had no power to pass a law rendering a void election and subscription for corporate or local purposes

valid, and thereby compel such corporation to incur a debt against its own wishes for such purposes. See Marshall v. Silliman, 61 Ill. 218, and cases cited therein; Wiley v. Silliman, 62 Ill. 170; Township of Elmwood v. Marcy, 92 U. S. 289; O. & St. L. R. R. Co. v. City of Sparta, 77 Ill. 505.

If we are correct in our conclusion, that the election held on the 7th day of April, 1868, upon the proposition to vote a subscription of $50,000 to the capital stock of the Grayville & Mattoon Railroad Company, was a nullity, for the reason that said election was called by a body that had no power to call such election, then it follows that the subsequent subscription order, made on the 11th day of December, 1868, by the Board of Supervisors, so far as it was based upon this election, was also a nullity. Such subscription order, in so far as it assumed to subscribe $150,000 to the capital stock of the relator, was made without any legislative authority whatever, either direct or indirect, and was absolutely void.

In April, 1869, the curative act above referred to became a law. If there has been any power or authority in the supervisors to subscribe the $150,000 in controversy, it must be by virtue of the above quoted third section of this act. If said section was self executing, and if its effect was to render valid and binding against the county, without the subsequently expressed assent of the corporate authorities thereof, this void election and void subscription, then said section was a violation of the Constitution. The election and the subscription were both accomplished facts and both nullities, and the legislature could not, without the corporate consent, breathe into them the breath of legality and life, and make them a valid corporate debt. But we do not so interpret this act of 1869. At most, it merely granted power to the county to subscribe, if it even did that, but left it optional with the corporate authorities to subscribe or not, just as the corporate will should dictate.

After the date of this curative act, the board of supervisors made no further orders in regard to this alleged subscription until the 12th day of December, 1871. We have deemed it unnecessary to examine as to the character of the orders made at that date and afterwards. It was then too late for the board

to make the county a subscriber to the capital stock of relator for this sum of $150,000 by any order that it might assume to make and enter upon its records.

The present Constitution went in force on the 8th day of August, 1870, and it provided in express terms that no county, city, town, township, or other municipality, should ever become subscriber to the capital stock of any railroad or private corporation, or make donation to or loan its credit in aid of such corporation, except in cases where such subscriptions had been authorized, under existing laws, by a vote of the people of such municipalities prior to the adoption of said Constitution. At the date this constitutional provision went in force there was no binding contract of subscription, and the subscription of the $150,000 was not authorized, as we have seen, "under existing laws by a vote of the people." Jackson Co. v. Brush, 77 Ill. 59; Middleport v. Ætna Life Ins. Co. 82 Ill. 562. It follows, therefore, as a necessary result, that the corporate authorities of the county having failed to exercise the power conferred upon them by the curative act of 1869, until after the Constitution of 1870 went in force, the power itself was revoked by that Constitution.

We are of the opinion that the Circuit Court erred in finding for the relator and awarding the peremptory writ of mandamus, and in rendering judgment against plaintiffs in error for costs. The judgment is reversed and the cause remanded.

Reversed and remanded.

ALLEN, J., took no part in the decision of this case.