## MONADNOCK RAILROAD v. PETERBOROUGH.

## PETERBOROUGH RAILROAD v. PETERBOROUGH.

Under section 16 of chapter 34, Gen. Stat., a *two-thirds* vote at a legal meeting is necessary to appropriate the money raised, as much as it is to raise the money to aid in the construction of a railroad.

The appropriation of the money is the selecting and designating of the particular road, that is to receive the benefit of the money thus raised to aid in its construction.

What the statute requires to be done by a town at a legal meeting, cannot be done by a committee.

A town cannot delegate its power to any committee to elect which of two or more railroads shall be aided by the town, by the appropriation of money raised to aid in the construction of a railroad under this statute.

Before any burden can be imposed upon a town under this statute, it must be made to appear affirmatively, not only that the money has been raised, but that it has been appropriated to a particular road, by a two-thirds vote of the legal voters of the town, present and voting at a legal meeting of such town.

## MONADNOCK RAILROAD v. PETERBOROUGH.

ASSUMPSIT. Writ dated November third, 1869, plea the general issue. The plaintiff claims to recover $65,000, a sum equal to five per cent. of the valuation of defendant, which defendant was authorized to appropriate by chap. 2890, laws 1864.

By agreement the case was tried by the court, and the following facts were found:

Article 22 of the warrant for a town meeting in Peterborough, March, 1867, was: "To see if the town will vote to raise by tax, or loan, a sum of money equal to five per cent. of the valuation of the town, for the year 1867, and appropriate the same as a gift or gratuity to aid in the construction of a railroad from the Manchester and North Weare Railroad, at or near Parker's Station, so called, through Peterborough Centre Village to the Cheshire Railroad, at or near State Line Station, so called; *provided*, that no part of said sum shall be expended until the town shall have received sufficient guaranty and security, that said railroad shall be completed to said Peterborough Centre Village, and that said sum shall be raised by tax in annual installments, not exceeding ten per cent. of the same; and further *provided*, that no tax shall be assessed for said purpose, until the building of said railroad is contracted to Peterborough Centre Village."

At said town meeting it was voted—yeas 312, nays 117—"that the town raise by loan," &c., following substantially the language of the warrant, except the word "contracted" in the last proviso of the

VOL. XLIX.      19

warrant, for which "concluded," was substituted. Article 19 of the warrant for a town meeting in Peterborough, March, 1869, was: " To see if the town will vote to appropriate the gratuity of five per cent. of its valuation (raised by a vote at the annual meeting in March, 1867), upon the same conditions and limitations specified in said vote, as a gift or gratuity to any railroad corporation that will construct a railroad to or through Peterborough Centre Village, and will authorize and instruct the town railroad committee, to elect for the town, to what railroad corporation, and in aid to the construction of what line of railroad, said gratuity shall be given and applied."

At said town meeting in March, 1869 : "Voted to adopt article 19 of the warrant; yes 195, no 12." "Voted that the town do hereby recognize and constitute the following gentlemen as the railroad committee, mentioned in article 19 of the warrant : Jonas Livingston, James Scott, Joseph Noone, G. P. Felt, A. P. Morrison, Frederick Livingston, Albert Smith, Albert S. Scott, A. J. Aldrich."

At an adjourned meeting of the railroad committee of the town of Peterborough, held at French's Hotel in Peterborough, at one o'clock P. M., on Monday, May thirty-first, 1869, on motion of A. J. Aldrich, "voted that the five per cent. of the town of Peterborough be appropriated to the construction of the Monadnock Railroad in accordance with the conditions prescribed in the vote of said town at the annual meeting in March, 1867, relating thereto, and also in accordance with the recent vote of said town at the annual meeting in March, 1869, vesting in the railroad committee the power to apply said five per cent." The vote was as follows : Frederick Livingston, yes ; Jonas Livingston, yes ; J. Noone, yes ; G. P. Felt, no ; A. J. Aldrich, yes ; James Scott — A. S. Scott, yes ; Albert Smith, no ; A. P. Morrison, no. Affirmative 5 ; negative 3. One not voting.

At a meeting of plaintiff's directors at Peterborough, May thirty-first, 1869, at 5 P. M., " at the suggestion of Joseph Noone, Esq., an attested copy of the doings of the Peterborough town committee in relation to the five per cent. of Peterborough, was heard, read and accepted, adopted and recorded, on motion of Jonas Livingston ; it was voted as follows, to wit :" (copy of the foregoing record of said committee) " Voted, on motion of Jonas Livingston, that J. H. Fairbanks, O. H. Bradley and H. K. French be a committee of the directors of the Monadnock Railroad to examine into the construction of at least two recently-built railroads, in view of selecting one, as a standard for the construction of this road, and to confer with any contractors, and if no satisfactory offers are received for the construction of the aforesaid road, that this committee are hereby instructed to advertise for proposals, and when satisfactory proposals are received, they are authorized to close a contract, subject to the decision of the board of directors." At a meeting of plaintiff's directors, June fifth, 1869, " heard the report of J. H. Fairbanks, chairman of committee on examining railroads

and proposals of contractors; also proposals of Willis Phelps as read by Mr. Fairbanks.   *   *   *   On motion of Peter Upton, it was voted, that the report of the chairman of the committee, in regard to Mr. Phelps' proposal, be accepted, and that the committee be authorized to close a contract with him."

June third, 1869, plaintiff's committee received from said Phelps a proposal to build plaintiff's road, and another proposal from one Wood, both of which were considered by plaintiff's directors, June fifth.    June seventh, 1869, in accordance with an understanding of plaintiff's committee, Fairbanks informed Phelps that plaintiff's directors had voted to accept his proposal, but that they wanted him to put in more ties than he had proposed, and Phelps agreed to put in more; the number being then named and agreed upon, and it was also then agreed that Fairbanks should, in a short time, carry Phelps' proposal to a Mr. Torrey, at Fitchburg, Mass., and that Torrey should write the contract, in a certain form, according to the terms of that proposal, except as to the number of ties, the increased number of which as then agreed upon, was to be inserted.    On the same day, Fairbanks informed the other members of plaintiff's committee of what had passed between him and Phelps, and in a day or two, Fairbanks went to Fitchburg and caused the contract to be written by Torrey according to the agreement with Phelps.    The written contract purports to be executed June seventh, 1869, but was executed June twelfth, 1869.    Before June eleventh, Phelps and plaintiff's directors understood that the terms of the contract were agreed upon, and the contract was concluded so far as its terms depended on a mutual understanding of the parties, but all parties had a vague and indefinite idea that for practical or legal purposes it was necessary that the contract should be in writing; Phelps testified by deposition that before June twelfth, he made an arrangement with his son "to take an interest in this contract," and "to my best recollection, I also engaged an engineer, and purchased a number of carts and harnesses to be used in the construction of the road."

At a meeting of the defendant's railroad committee, "held at banking rooms of the First National Bank of Peterborough, on Friday, June eleventh, A. D., 1869, at four o'clock, P. M., and adjourned to house of Abraham P. Morrison, on motion of Albert S. Scott, voted that the vote passed at last meeting of committee applying the five per cent. gratuity of the town of Peterborough to the construction of the Monadnock Railroad be reconsidered.    The vote was taken by yeas and nays as follows : Albert Smith, yes; James Scott, yes; Granville P. Felt, yes; A. P. Morrison, yes; A. S. Scott, yes; A. J. Aldrich, no.    The members of the committee absent and not voting : Jonas Livingston, Frederick Livingston, Joseph Noone.

On motion of James Scott: Voted, that a copy of this vote be furnished to the contract committee of the Monadnock Railroad." Said Morrison was notified of this meeting and the meeting was

adjourned to his house because he was sick, he being able to transact business at his house.

Jonas Livingston was a member of the legislature, and a notice of this meeting was sent by telegraph to Concord, directed to him, which he would have received in season to attend the meeting, and he would have attended the meeting and opposed the vote passed, or have endeavored to prevent the meeting being held, but for the circumstance that he happened to be absent from Concord for a day, and did not receive the notice till after the meeting had been held. Frederick Livingston was duly notified of the meeting, but he refused to attend, because he was opposed to the reconsideration. Noone was duly notified, but he refused to attend, because he was opposed to the reconsideration, declaring when he was notified, that he recognized no power of the committee to take any further action, and that he should not meet with them.

If all the members of the committee had been present at the meeting, the vote of reconsideration would have been passed by the votes of the five members who voted in the affirmative, and the other four members would have voted in the negative or refused to vote. And if all the members had received due notice, said five members would have held the meeting and would have voted as they did, whatever the others might have said or done.

June eleventh or twelfth, before the execution of the written contract with Phelps, the plaintiff's directors, committee and clerk were notified of said vote of reconsideration of defendant's committee.

Said contract was signed, on plaintiff's part, by Fairbanks and by Bradley, and on the other part by Willis Phelps & Co. Plaintiff proceeded on the ground that defendant's committee, by their vote of May thirty-first, had exhausted their power, and that plaintiff had acted upon that vote, and that therefore that vote could not be reconsidered. June fifteenth, 1869, the following guaranty and notice were executed in duplicate.

"To the inhabitants of the town of Peterborough, in the state of New Hampshire : Whereas, on the thirty-first day of May, A. D. 1869, the railroad committee chosen by said town, notified the direct-ors of the Monadnock railroad company that said committee had appropriated the gratuity of said town to the use and benefit of said railroad company, and whereas, relying upon and in consequence of said appropriation and notification, said railroad company on the seventh day of June, A. D. 1869, closed a contract with Willis Phelps & Co., for the construction of a line of railway from the Cheshire Railroad in the town of Winchendon, Massachusetts, to the Centre Village in said Peterborough. Now, therefore, we, the undersigned, directors of said railroad company, do hereby guarantee to said town of Peterborough, that said company shall construct a line of railway from said Winchendon to said Centre Village of said town of Peterborough, and complete the same on or before the first day of November, A. D. 1870, and, in accordance with the

votes of said town of Peterborough, we hereby notify you that we shall apply, from time to time, as the work progresses, for said money appropriated as aforesaid.

Peterborough, June 15, A. D. 1869.

| | | |
|---|---|---|
| ✳✛✛✳═✳✛✛✳<br>‡   10 cent   ‡<br>✳   Stamp.   ✳<br>‖ June 15, 1869. ‖<br>‡   J. H. F.   ‡<br>✳✛✛✳═✳✛✛✳ | JONAS LIVINGSTON,<br>J. H. FAIRBANKS,<br>P. UPTON,<br>O. H. BRADLEY,<br>HENRY K. FRENCH,<br>BAXTER D. WHITNEY, | *Directors of*<br>*Monadnock*<br>*Railroad*<br>*Company.*" |

June nineteen, 1869, a deputy sheriff delivered one of the duplicates to the town clerk of Peterborough, and the other to Jonas Livingston, who was the first-named member of defendant's committee in the vote of the town appointing the committee, and who had acted as chairman of committee, at their meeting of May first. June twenty-third, the engineer employed by Phelps & Co. commenced locating plaintiff's road, and August four, Phelps & Co. commenced grading the road. Article two of the warrant for a town meeting in Peterborough August ten, 1869, was:

"To hear the report of the town railroad committee acting under article nineteenth of the warrant for the annual March meeting of 1869, and take any action thereon which may be deemed proper by the town." At said town meeting, August tenth, 1869, reports were submitted by the town railroad committee. The majority report signed by Albert Smith, James Scott, G. P. Felt, A. P. Morrison, A. S. Scott; the minority report signed by Jonas Livingston, chairman for committee. Mention was made by Charles Scott, that the two reports of the majority and minority of the committee lie upon the table, and that the meeting accept the resolutions reported by the majority, signed by A. S. Scott and others. The following amendment to the above motion was made by R. B. Hatch: "That all after moved be stricken out and the following substituted:" "That the town accept the report made by Jonas Livingston and adopt the same, and that the report be recorded by the town clerk." The amendment was carried, 184 voting *yes*, and 91 voting *no*. The original motion, as amended, was then passed.

The following motion was made by R. B. Hatch: "To instruct the selectmen to negotiate the loan authorized by the action of the town, and to pay over the said five per cent. to the Monadnock Railroad Company, whenever that corporation shall comply with the conditions imposed by the action of the town." This motion prevailed. Voted to dismiss the warrant and adjourn.

A true record,

*Attest:*    A. G. HOWE, *Town Clerk.*

Report of the minority town railroad committee.

"To the citizens of the town of Peterborough: Your railroad committee, who were authorized and instructed by vote of the town at its annual town meeting in March, 1869, to choose for the town to

what railroad corporation, and in aid to the construction of what line of railroad, the gratuity of five per cent. of the valuation of the town, raised and appropriated at the annual meeting of the town in March, 1867, should be given and applied, submit the following report : That on the thirty-first day of May, 1866, said committee met at French's Hotel, in said Peterborough, all the members of said committee being present, and by vote of a majority of said committee, elected for said town, to give and apply said gratuity to aid in the construction of the Monadnock Railroad, running from Winchendon, Massachusetts, to the Centre Village in said Peterborough, and on the same day notified the directors of said railroad company of the action of said committee, by serving upon them an attested copy of the record of the action of said committee ; all of which is respectfully submitted.

Jonas Livingston, *Chairman for Committee.*"

August sixteenth, a bond, duly stamped, signed by plaintiff's directors, was delivered to the selectmen of Peterborough ; the condition of this bond is : "If the said town, by its selectmen having first raised and paid over to the said Monadnock Railroad Company the amount of said gratuity, the said obligors    *    *    shall construct said railroad to the Centre Village in said Peterborough, ready for operation on or before the first day of January, A. D. 1871, in accordance with the conditions affixed by said town of Peterborough to the appropriation of said gratuity, then this obligation shall be void."

The penal sum and the signers of said bond are unobjectionable. The bond purports to be dated July seventeen, 1869. It was not stamped till after the town meeting of August tenth. At said meeting, plaintiff's treasurer had the bond, and in the public discussion of the motions then made, he spoke of the bond. and it was then understood by all parties, that plaintiff would deliver to defendant a good and sufficient bond, when it should be settled that plaintiff should receive the gratuity. For some time before, and at said meeting, plaintiff was ready to affix the necessary stamps to said bond and to deliver it as soon as it should be settled that plaintiff should receive the gratuity, if they complied with the votes of the town. Plaintiff did not affix the stamps before said meeting, because they did not know whether the town would agree to pay them the gratuity, and plaintiff wished not to lose the value of the stamps, if the gratuity should be paid to the Peterborough Railroad instead of the plaintiff.

October twenty-third, plaintiff notified defendant that on the second day of November, plaintiff would "call upon" defendant "for the payment of one-tenth of the gratuity."

November second, plaintiff demanded of defendant said one-tenth.

November fifth, the selectmen of Peterborough sent to plaintiff's directors the following paper :

"To the board of directors of the Monadnock Railroad Company : Your demand upon the town of Peterborough for the first install-

ment of the five per cent. of the valuation of said town, for the year 1867, voted and appropriated at the annual meetings held in March, 1867, and in March, 1869, as a gift or gratuity to any railroad corporation that will construct a railroad to or through Peterborough Centre Village, was received November second, 1869. The security furnished in behalf of your corporation is satisfactory, but there is a suit now pending for the same gratuity in behalf of the Peterborough Railroad Company.    The town of Peterborough cannot therefore pay or secure said sum to either party, until its legal duty in the premises, shall be determined and settled.    And with the view of obtaining such settlement, and to avoid the trouble and expense of defending a suit, which you have instituted and commenced against said town for said gratuity, we would propose that the legality of your demand and all questions arising under it, be referred to the late chief justice of the supreme judicial court of New Hampshire, Hon. Ira Perley, the present chief justice of said court, and associate justices, J. Everett Sargent, Charles Doe, George W. Nesmith and Jeremiah Smith, with the distinct understanding that the Peterborough Railroad be notified of said reference, and of the time and place of hearing, and afforded a full opportunity to be heard. If this reference shall be agreed to by you, we, the selectmen of said Peterborough, on the part of said town, agree to refer the suit which you have commenced against said town, to recover the said five per cent. gratuity of said town, and all questions that may arise under it, to the above-named gentlemen, and that their decision in the matter shall be final.

Peterborough, N. H., Nov. 5, 1869.

SAMUEL I. VOSE,<br>
M. L. MORRISON,   *Selectmen of*<br>
CHARLES BARBER,   *Peterborough.*"

Plaintiff's original charter is chapter 773, laws 1848. That charter was revived by chapter 4351, laws 1866, and amended by chapter 107, laws 1867, and by chapter 73, laws 1869.

By the Phelps contract, plaintiff's road is to be completed on or before August first, 1870, plaintiff "to furnish the right of way, and all land necessary to be taken for borrowing and wasting earth, to construct all necessary cattle passes, and to erect sign boards at highway crossings, if they shall desire the same," and to pay Phelps & Co. $240,000 in cash, and $60,000 in their stock at par, the road to be made ready for the cars by Phelps & Co.    A little more than one-half of the road is now built.    About two miles of it are in Massachusetts.    The land damages are estimated at $9,000.    The stock is in three thousand shares, and the par value of a share is $100.    Two thousand one hundred and fifty-one shares have been subscribed for, including six hundred shares to be paid to Phelps & Co.    Plaintiff estimates their gratuities at $98,000, including those of Peterborough and Jaffrey.    Some shares were subscribed for before the organization of the company, with the under-

standing that they should be taken if the company should be organized.   With the exception of less than twenty shares subscribed for during the last three or four months ; the subscriptions were not stamped when they were signed.   Within the last four months the directors have caused them to be stamped without the authority or knowledge of the signers, except the directors who had personally subscribed for three hundred or four hundred shares.   Fairbanks, one of the directors, a citizen of Winchendon, Massachusetts, was one of a committee of three, who, by the authority of Winchendon, subscribed for three hundred shares for that town in a Massachusetts railroad company, with which the Monadnock Railroad in New Hampshire claims to be legally united.   Plaintiff has made assessments upon its stock, and the assessments have been paid, excepting about four hundred shares, principally owned in Peterborough.   March twenty-seventh, 1869, the legislature of Massachusetts passed ''an act to incorporate the Monadnock Railroad Company.''   By section 1, John H. Fairbanks, Charles L. Beals, Ephraiam Murdock, Jr., their associates and successors were made a corporation with the powers, privileges, restrictions, duties and liabilities set forth in the general laws.   Section 2, authorized said company to construct and maintain a railroad ''from a point at the terminus of the Monadnock Railroad on the boundary line between the state of New Hampshire and Massachusetts, and between Rindge and Winchendon, and thence running southerly in Winchendon to the Cheshire Railroad.''   By section 3, the capital stock should not exceed $50,000.   Section 8, authorized said company ''to unite with any railroad company which is, or may be, incorporated in the state of New Hampshire, with authority to build a railroad from Peterborough to the state line, at the terminus of said railroad hereby authorized to be constructed, and when the two companies shall have so united, the stockholders of the one company shall become the stockholders of the other company, and the two companies shall constitute one corporation by the name of the Monadnock Railroad Company.''   Section 9, required ''one or more of the directors or other officers of said united corporation,'' to be an inhabitant of Massachusetts, ''on whom process against said company may be legally served.''   Section 11, ''said company and the stockholders therein, so far as their road is situated in Massachusetts, shall be subject to all the duties and liabilities created by provisions of the laws of this Commonwealth, to the same extent as they would have been if the union of said companies had not taken place.''

Pursuant to notice the Monadnock Railroad Company in Massachusetts was organized at Winchendon, June nineteenth, and June twenty-third, 1869 ; July third, 1869, said company voted to unite with the Monadnock Railroad Company of New Hampshire; and to accept the provisions of the acts of New Hampshire, incorporating said company or passed in relation thereto.   July seventh, 1869, the Monadnock Railroad Company of New Hampshire, at a meeting at Peterborough, voted to adopt the provisions of the Massachusetts

act incorporating the Monadnock Railroad Company, "providing for a union of two corporations, both having the name of the Monadnock Railroad Company," and particularly the provisions of the "8, 9, 10 and 11th sections of the aforesaid act."

## PETERBOROUGH RAILROAD v. PETERBOROUGH.

ASSUMPSIT. Writ dated September 17, 1869. The pleadings and claim are substantially the same as in *Monadnock Railroad* v. *Peterborough*. By agreement of parties, both cases were tried together by the court. The facts of each case are to be considered in both cases as far as they are competent. The following additional facts were found. The two railroads are adverse claimants of the gratuity, and the town resists the claim of both.

April 19, 1869, at a meeting of the directors of the Nashua and Lowell Railroad Co., held in Boston, it was voted that the Nashua & Lowell Railroad Co., will contract with the Peterborough Railroad Co. for the operation of their road from Peterborough to Wilton, on a twenty years lease, from the time of its opening for the regular running of trains, at an annual rental of six per cent. upon the net cost of the road. Provided, that not less than one thousand dollars shall be raised as a gratuity and expended toward such construction, free from interest or rental, and that the expenditure for the entire construction shall be under the direction or to the satisfaction of this company.

May 26, 1869, at the annual meeting of the Nashua & Lowell Railroad at Nashua, voted : " That the stockholders of the company approve the action of the directors in regard to the extension of the Wilton Railroad to Peterborough, as expressed in a vote passed by them on the 19th day of April last, such extension to be either from Wilton or from such other point on the Wilton Railroad as the directors may judge most for the interest of this company, and that the directors be, and are hereby authorized to enter into and complete a contract for the operation of said Wilton Railroad, and of said Peterborough Railroad, upon the basis specified in said vote." July 28, 1869, at a meeting of the directors of the Peterborough Railroad, voted : " that the directors of the Peterborough Railroad furnish to the Peterborough Railroad committee and the town of Peterborough, a satisfactory bond, that the said Peterborough Railroad shall be built from Wilton to Peterborough within the year 1870, on condition that the gratuity of five per cent. of Peterborough be paid to said road." Aug. 6, 1869, at a meeting of the. same directors : " a bond to the town of Peterborough and to the railroad committee of the same, guaranteeing a subscription of three hundred thousand dollars to the Peterborough Railroad, having been produced and signed, it was voted : That Charles Scott be authorized to affix to said bond all necessary stamps, and cancel the same and deliver said bond." July 28, 1869, said bond was signed, and the penal sum and the signers are unquestionable.

Aug. 7, said bond having been duly stamped, was delivered by Charles Scott to A. S. Scott, the clerk of the town committee, before the following proceedings of said committee. Aug. 7, 1869, at a meeting of the " railroad committee of Peterborough," at Peterborough, " which meeting was duly notified by notice in writing served upon each member of the committee, signed by the clerk of the same," " present James Scott, G. P. Felt, Albert Smith, Albert S. Scott, Abraham P. Morrison," the following resolution was passed by the unanimous vote of all present.

Resolved, that the railroad committee, by the authority vested in them by the town of Peterborough, at its annual meeting in March, 1869, elect that the Peterborough Railroad company shall receive the gratuity of five per cent. of the valuation of said Peterborough, for the year 1867, raised and appropriated at the annual meeting of said town in March, 1867 and 1869, in accordance with the conditions of said votes, of 1867 and 1869, satisfactory guaranties having been furnished the committee that said Peterborough Railroad will be constructed from the terminus of the Wilton Railroad to Peterborough Centre Village." The condition of said bond " is such, that if the said town of Peterborough, by its railroad committee, duly authorized or otherwise, shall apply the five per cent. of its valuation in 1867, voted to be raised at the annual meeting of said town in March, 1867, and by a subsequent vote of said town at the annual meeting in March, 1869, voted to be appropriated as a gift or gratuity to any railroad corporation that would construct a railroad to or through Peterborough Center Village     *     *     *     to the Peterborough Railroad Corporation, as a gift or gratuity to aid in the construction of the Peterborough Railroad, extending from the terminus of the Wilton Railroad at East Wilton to Peterborough Center Village, the said obligors shall construct or cause to be constructed ready for use and occupation the said Peterborough Railroad, from said terminus in East Wilton to Peterborough Centre Village, in accordance with the provisions of the charter of said railroad, before the first day of January, A. D., 1871, then this obligation shall be void." Aug. 9, 1869, at a meeting of the directors of the Peterborough Railroad, a copy of the record of the proceedings of the town committee on the 7th day of August was received from the clerk of that committee, and read, and recorded. And said directors voted, " That the Peterborough Railroad Corporation accept the gratuity of five per cent. of the town of Peterborough, tendered them by the railroad committee of said town, by their vote of August 7, 1869, of which notice has been received, and that the clerk notify said committee, and town clerk and selectmen of said town of Peterborough in writing, of said acceptance." And on the same ninth of August the notice ordered by that vote was given. Aug. 10, at a meeting of the same directors, a copy of the vote of the directors of the Nashua & Lowell Railroad Co., passed April 19, was presented. Whereupon it was voted that the proposition contained in that vote " is hereby accepted on the part of this corpora-

tion, provided the gratuity of $100,000, including the five per cent. from the town of Peterborough, be secured to this corporation towards the building of said road from Wilton to Peterborough Center Village." And on the same 10th day of August, the Nashua & Lowell R. R. was notified of this acceptance. On the same 10th day of August, Charles Scott, a director of the Peterborough R. R., received said bond from the clerk of the town committee, carried it to the town meeting, and in the public discussions of the motions there made, read said bond, and said " we present it to the town," and at the same time delivered it to the selectmen, before the votes of the town of that day were passed. August 25, the Peterborough Railroad demanded of defendent the five per cent. gratuity.

August 10, the stock subscriptions of the Peterborough Railroad were $300,000, and their gratuities, including that of the town of Peterborough, were $100,000. The cost of the road would be $400,000. The road will be built if it receives defendants gratuity, and the Monadnock Railroad will be built whether it receives that gratuity or not.

Upon the foregoing facts the court is to render judgment in each case.

*Questions of law reserved.*

*Wheeler & Faulkner, Minot, Tappan & Mugridge, R. B. Hatch,* for Monadnock Railroad.

*J. H. George, G. Y. Sawyer, 1. Perley,* for Peterborough Railroad.

*E. M. Smith, B. Wadleigh,* for Peterborough.

SARGENT, J. In March, 1867, the town of Peterborough voted a gratuity of five per cent. of its valuation, and appropriated the same, to aid in the construction of "a railroad from the Manchester & North Weare Railroad at or near Parker's Station, so called, through Peterborough Centre Village to the Cheshire Railroad, at or near State Line Station, so called."

Nothing appears to have been done under this vote, and it would appear that the railroad to which this gratuity was thus appropriated had been abandoned, in the two years following 1867 ; for in March, 1869, an article was inserted in the warrant, "to see if the town will vote to appropriate the gratuity of five per cent. of its valuation (raised by a vote at the annual meeting in March, 1867,) upon the same conditions and limitations, specified in said vote, as a gift or gratuity to any railroad corporation that will construct a road to or through Peterborough Centre Village, and will authorize and instruct the town railroad committee to elect for the town to what railroad corporation, and in aid to the construction of what line of railroad said gratuity shall be given and applied."

At the town meeting, the above article was adopted and the town

railroad committee were recognized. The town committee soon met and voted to appropriate said gratuity to the Monadnock Railroad, notified said road of that fact, which accepted the same and commenced negotiations to contract the building of their road. June eleventh, said committee, or a majority of them, had another meeting and reconsidered their former vote, and notified the officers of the Monadnock Road of such reconsideration; and August seventh said committee, or a majority of the same, voted to appropriate this gratuity to the Peterborough Railroad Company, which company soon after accepted the same, and both companies have given sufficient guarantees that they will perform on their part, the conditions required by the vote of the town.

August tenth, 1869, another town meeting was holden, at which the committee made two reports, one in favor of each road, and upon a motion to accept the report in favor of the Peterborough Road, an amendment was offered substituting the other report in favor of the Monadnock Road in lieu of the other, which amendment was accepted by more than a two-thirds vote. "The original motion, as thus amended, was then passed," but it did not appear by what majority, or that it was carried by a two-thirds vote.

Both the Monadnock and the Peterborough Railroad claim this gratuity, and have each brought a suit to recover it, and the town resists both suits.

It appears that the road to which the gratuity was first voted, was a different line from that of either of these plaintiffs, which has been given up, and no question is now made in relation to that road. Various questions have been argued here, among which, are the legality of the vote of 1867 by which the gratuity was raised, and also as to the powers of the committee, whether they must *all agree in a result* or whether they must all *act*, and a majority *decide*, or whether a majority may meet in the absence of the rest and transact business, and their acts be good, if carried by a majority of the whole committee. But it seems to us, that another question underlies all these and that is, whether the town could delegate its powers to any committee to act for them in making the appropriation of this gratuity.

Assuming that the vote of 1867 was well enough, which raised the gratuity and appropriated it to a particular road. Also, assuming that after that road had been abandoned, the town might have appropriated the same gratuity to some other road as they attempted to do in this case, neither of which questions do we decide, can the town delegate this power of appropriating the money to a particular road, to any committee?

The town could not raise the money by a committee; that must be done by the voters present and voting at the town meeting. How must it be appropriated? The law provides, (laws of 1864, chap. 2890, sec. 1,) that "any city or town may, *at a legal meeting*, duly notified and holden   *   *   *   *raise by tax or loan* such sums of money   *   *   *   *and may appropriate the same*, to aid in the construction of any railroad   *   *   *   *in such manner as*

*they shall deem proper* provided that two-thirds of the legal voters, *present and voting at such meeting shall vote therefor.*" The language in the Genl. Stat. chap. 34 sec's 16 and 17, is not quite so full, but no change in the law was intended.

Language could hardly be more definite or more explicit than this of the intention of the legislature, that the vote of appropriation to some particular road, should be passed at the legal meeting, provided two thirds of the legal voters *present and voting at said meeting* shall vote therefor, just as much as, that the money should be raised by tax or loan at the same meeting and by the same vote of the legal voters *present and voting.* This statute gives to the legal voters of the town the right to raise money by loan or tax, and to appropriate it at their legal meeting. It is a power conferred upon towns to be exercised at legal meetings and by the legal voters; provided, "two thirds vote of the legal voters present and voting at such meeting shall vote therefor." The towns have not the privilege of substituting a committee to settle either of these questions for them, but they must both be settled at the legal meeting and by a two thirds vote of the legal voters present and voting at such meeting.

The only expression in the statute which could seem to be construed into any different meaning, is this, "in such manner as they shall deem proper." But upon examining the statute, we think that this sentence refers, not to the manner in which the action of the town should be had or the vote passed, or the election of the road made certain to which the money should be apppropriated, but to the manner in which the aid shall be furnished to the road to which it has been appropriated by the two thirds vote of the legal voters, &c. The statute contemplates in the first and second sections different ways of affording the aid to the road, it may be by a direct appropriation and a paying over of the whole sum at once to aid in the construction of some road nearly finished and only needing this additional sum to complete it. Or they may appropriate it with a view to aid some new company that has not yet begun to construct its road, and may, under sec. 2, make a contract to pay this money by installments, or a certain proportion yearly, or as the different portions of the work are completed, and so the application may be made in aid of the construction of the road in such manner as the town deems proper.

The money which has been voted and appropriated to some particular road in the way, and by the vote required at the meeting, may be applied to aid the road "in such manner as they shall deem proper," or best adapted to promote the construction of the road.

We think the vote of the town should designate the particular road to aid which the money is appropriated. There are many considerations of public policy that would bear upon this question. If there were rival routes as in this case, the friends of one would natually oppose the other; but if through the interest of the railroads the town had got a railroad committee already appointed that was understood to be very nearly evenly divided between these two

or more rival routes, the friends of all these routes would be likely to unite in voting to refer the matter of electing the road to that committee (each trusting to his influence with the members of the committee) and thus carry a two thirds vote for that measure, when if either route was brought directly and specifically before the town at its legal meeting, the required vote of two thirds could not be obtained in its favor.

The danger is, that towns in the midst of the pressure and excitement, and rivalry that prevails on these subjects, will rush thoughtlessly into debt in aid of some enterprise that shall in the end prove of little value or importance.    The legislature has therefore provided for a two thirds vote in this class of cases, instead of the major vote in ordinary cases ; and it can hardly be supposed that the legislature intended to put it in the power of three or four rival routes, which would all unite in their endeavors to get the town to raise the money and leave it with a committee to select the route to which it should be appropriated, by such union to carry a two thirds vote of the town thus to raise money, when neither of the routes standing alone would have intrinsic merits of its own, sufficient to carry even a majority of the votes of the town.    We think the town can no more appropriate this money by a committee, than they could raise it by the same committee ; that the electing which of two or more roads should receive this gratuity, would be, in fact, appropriating it, and that this can only be done, as the statute has provided at the legal meetings of the town and by the legal voters present and voting at such meetings.

We do not intend to decide, that the vote of the town on the tenth of August, adopting the report of Mr. Livingston in favor of the Monadnock Road, would not have been a sufficient appropriation of the money to that road by the town, if it had appeared affirmatively that this vote was carried by the required two thirds of the voters present and voting.    But that is a fact which must appear affirmatively from the record.    It would not follow that, because two thirds of the voters were in favor of amending the original resolution, by substituting the report in favor of the Monadnock Road, for that in favor of the Peterborough Road, there would necessarily be the same majority upon the final passage of the resolution, because as between two roads, the town might be unanimously in favor of one rather than the other, and yet not be so strongly in favor of either as to wish to vote money of the town for its construction.

A case strongly in point is *Thompson* v. *Schermerhorn*, 9 Barb. 152, and the same case on appeal in 6 N. Y. (2 Selden) 92.

In *Clarke* v. *Supervisors*, 27 Ill. 305, it was held, that in ordering an election to determine whether a county will subscribe for stock to aid in building a railroad, it is improper to submit the question, whether two different roads shall be so aided by a single vote, so that the two propositions cannot be voted on separately.

See, also, *Starin* v. *Genoa*, 23 N. Y. 439, 455.    But we have two cases in this state directly in point,—*School District* v. *Gilman*,

3 N. H. 168, where it is held that " what the statute requires to be done by the town at a legal meeting cannot be done by a committee," and *Neal* v. *Lewis*, 46 N. H. 276.

It follows then, that all that the town has done since 1867, goes for nothing. The appointment of the committee for the purposes specified in the vote, and the action of the committee, whether in favor of one road or the other, or both, was not authorized by the statute, and can have no legal effect, and as none of their acts have been ratified by the town so far as appears, by the necessary two-thirds vote, there must be in both these suits,

*Judgment for the defendant.*