DAVIS (GOODYEAR DENTAL VULCANITE CO. v.). See Case No. 5,589.

DAVIS (GRAY v.). See Case No. 5,715.

DAVIS v. GREENE COUNTY COURT. See Case No. 15,259.

DAVIS v. HATCHER. See Case No. 3,610.

DAVIS (HAYDEN v.). See Case No. 6,259.

DAVIS (HERIOT v.). See Case No. 6,404.

DAVIS (JONES v.). See Case No. 7,460.

---

## Case No. 3,638.

### DAVIS v. KENDALLVILLE.

[5 Biss. 280.] [1]

Circuit Court, D. Indiana. May Term, 1873.

MUNICIPAL BONDS—RECITALS—BONA FIDE HOLDER—SUBSCRIPTION BY CITY—HOW PROVED.

1. Where subscriptions of private citizens to the capital stock of a railroad corporation are taken up, and a subscription of the city substituted by consent, such an arrangement does not invalidate the city bonds unless the citizens had been deceived, or had voted or petitioned for the subscription under a misconception of the facts.

2. Where bonds bear upon their face the statement that they have been issued in pursuance of law, and under the contingencies required by law, a bona fide holder is not bound to go back and examine all the intermediate steps taken prior to their issue.

3. He is not presumed to have notice of everything which takes place before the issuing of the bonds; and an averment that the proceedings of the city council were spread upon the records of the city is not sufficient to charge him with notice

4. A resolution of a common council declaring the subscription, and approved by the mayor, is sufficient to show a subscription by the city.

This was a suit by Julian J. Davis, as the holder of a number of coupons attached to a series of bonds amounting to $83,000, issued by the defendant to the Grand Rapids and

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

Indiana Railroad Company in payment for a subscription of stock to a like amount made by the city. One of the bonds was filed with the complaint, from the face of which it appeared that the bonds were for a "six per cent. loan in aid of the Grand Rapids and Indiana Railroad, authorized by a petition of a majority of the resident freeholders of said city, and resolutions and ordinances of the common council thereof in pursuance of law." The several pleas are stated in the opinion. Demurrer to pleas.

C. P. Jacobs, for plaintiff.

The common council having determined that the requisite number of citizens had petitioned, plaintiff had a right to rely on their action in making the subscription. Knox Co. v. Aspinwall, 21 How. [62 U. S.] 539; Bissell v. Jeffersonville, 24 How. [65 U. S.] 287.

L. M. Winde and James A. Fay, for defendant.

The city having no power to use money for purposes other than what are specified in its charter, cannot borrow for other purposes. Such contract would be ultra vires and void. Smead v. Indianapolis, P. & C. R. Co., 11 Ind. 110; Madison & I. R. Co. v. Norwich Sav. Soc., 24 Ind. 457; Halstead v. Mayor, etc., of New York, 3 N. Y. 430; Hodges v. City of Buffalo, 2 Denio, 110. Power to borrow money for public purposes on city bonds, does not confer power to aid a railroad. Chamberlain v. City of Burlington, 19 Iowa, 395. A contract for improvement by the city without formalities directed by the charter is void, and the contractor can neither recover on it nor on the common counts. Johnson v. City of Indianapolis, 16 Ind. 227; City of New Albany v. Sweeny, 13 Ind. 246; Cowen v. West Troy, 43 Barb. 48. If a contract is void, the bonds issued in pursuance of it are also void, even in the hands of an innocent holder. Marsh v. Fulton Co., 10 Wall. [77 U. S.] 676. If the precise mode of entering into the contract directed by the charter is not complied with, the contract will be void. Johnson v. City of Indianapolis, supra; Bank of Augusta v. Earle, 13 Pet. [38 U. S.] 519, 587; Head v. Providence Ins. Co., 2 Cranch [6 U. S.] 127. For further authorities that a city cannot contract beyond the power given it, see Western Mass. Ins. Co. v. Duffy, 2 Kan. 352; Board of Com'rs of Tippecanoe Co. v. Cox, 6 Ind. 405; City of La Fayette v. Cox, 5 Ind. 39; Kyle v. Malin, 8 Ind. 37; City of Aurora v. West, 22 Ind. 96; Starin v. Town of Genoa, 23 N. Y. 439; Gould v. Town of Sterling, Id.; McSpedon v. Mayor, etc., of New York, 7 Bosw. 601. "The protection which commercial usage throws about negotiable paper can not be used to establish the authority by which it was originally used." Marsh v. Fulton Co., 10 Wall. [77 U. S.] 676, 681; Clark v. Polk Co., 19 Iowa, 248, 252; Brady v. Mayor, etc., of New York, 20 N. Y. 312; Farmers' & Mechan-

ics' Bank v. Butchers' & Drovers' Bank, 16 N. Y. 125.

DRUMMOND, Circuit Judge. It is not disputed that under the statute the city had the right to borrow money and subscribe for stock in the railroad company, and to issue bonds for stock. I assume, then, that the city had this power. This being so, and the bonds bearing upon their face the declaration that they were issued in aid of the railroad company, and authorized by a majority of the freeholders of the city, they were prima facie issued in conformity with the law.

Various defenses have been set up in the case, but they all depend on a state of facts substantially as follows: There had been a subscription to the stock of the railroad company by certain individuals, citizens of Kendallville and the adjoining country, through Mr. Samuel Hanna, the president of the company, to the amount of $83,000; and by an arrangement between the railroad company and the city, it was understood that these private subscriptions should be taken up, and the subscription of the city substituted in their place by consent. All the defenses proceed upon this agreement as a basis, and that it was the consideration and motive which induced the city to subscribe for the stock. In some of the pleas it is averred that this was the only consideration or inducement for the subscription by the city.

It seemed to be taken for granted during the argument, by defendant's counsel, that if the individual subscriptions were surrendered and the subscription by the city substituted in their place, that this ipso facto would be a defense. I am not prepared to admit this without qualification. There might be circumstances which would render such a subscription by the city illegal, and be an answer to the action, but they should be such as would show that some unfair advantage had been taken of the city or the citizens in the transaction.

If there were certain stock subscriptions of the citizens of Kendallville made in aid of this railroad, it would seem there could be no objection to the company's releasing these private subscriptions if all parties consented. No one could well make complaint in such case, and if the city should then subscribe for stock in the company, and if the subscription of the city was in fact substituted for the private subscription, and the citizens agreed to it, no one would be injured. If there was some secret trick by which the citizens were deceived, and the matter had been so arranged that the citizens had voted or petitioned for the subscription under a misconception of the facts, it might be inoperative. But if the facts were well known, and all parties understood it, I cannot see any objection to a subscription by the city on such a basis.

So, in examining the defenses, in addition

to what has been stated, I must consider that if the matter was understood all around there could be no fraud or wrongful act in making the subscription. And in view of the many cases decided by the supreme court of the United States on the question of the validity of municipal bonds, I have to assume this as the settled law—that where bonds bear upon their face that they have been issued in pursuance of law, and under the contingencies required by the law, and which have been left to the local officers to determine, and the bonds or coupons have come into the hands of a holder for value, it is not necessary for him to go back and examine all of the intermediate steps taken, to see whether there has been any flaw or irregularity. The only question is one of power, and if the power is given under certain circumstances, I must assume after the bonds are issued and held bona fide, that they were rightfully issued. It follows, then, that the special defenses should allege something more than the surrender and substitution already mentioned. For when the stock was issued and the city clothed with the rights of a stockholder, it is not enough to say that these were the motives upon which the subscription was made and the bonds issued. A party is not presumed to have notice of everything which takes place before the issuing of the bonds, and it is not enough to say that the proceedings of the city council were spread upon the records of the city. The averment ought to be that the plaintiff had actual knowledge of matters which might constitute the defense.

The first plea is the general denial, which presents a proper issue.

The second plea avers that Mr. Hanna had procured these individual subscriptions of citizens, which were afterwards canceled, and the city issued its bonds as set forth in the record, a copy of which is attached to the pleas, and of which therefore we can take notice; that plaintiff took the coupons after they became due, and therefore had notice, etc.

This defense does not go far enough. It may be true, and yet the subscription by the city be legal. The record of the proceedings clearly shows a subscription by the city, by resolution of the council and approval of the mayor, to the stock of the company. Some objection is taken in the argument that this does not show a subscription. Why not? What more solemn step in the matter could the city take than that set forth in the resolutions and ordinances adopted by the council?

The third defense is similar, and alleges notice by the city's record, which is insufficient. In fact, all the pleas numbered five, six, seven, eight and nine are defective for a similar reason.

The fourth plea avers notice, but does not aver facts sufficient to constitute a defense. I hold there must not only be the substitution of one subscription for another, but there must also be some deceit practiced upon the citizens, for if they do it with their eyes open no one can make any objection.

If there were a plea that this agreement was the only consideration for the bonds; that the city made no subscription and received no stock; and that plaintiff had notice,—it might be good. But here the fourth plea in fact admits, by not denying it, that the city received the stock of the company in exchange for the bonds, which stock became its property. This stock was a valuable consideration. The plea is therefore insufficient; and it may be added that the averment in one of the pleas, that the plaintiff took the coupons after they were due, is not enough without the other averment that some fraud or deceit had been practiced upon the citizens or the city. It is said that the city bonds would be more available to the railroad company than the private subscriptions of the citizens, and this may well be true, and yet if the citizens, knowing all the facts, did not at this time complain, they can not now be heard.

The tenth plea is held to be bad for the reasons given by the court in the case of Payson v. Withers [Case No. 10,864].

The demurrers of plaintiff to the second, third, fourth, fifth, sixth, seventh, eighth, ninth and tenth pleas of the defendant are therefore sustained. If the defendant's counsel think they can make the pleas sufficient by amendment they may take reasonable time to do so, but it may be a serious question whether the city's liability is not fully fixed by its records.

NOTE. A state legislature has the right, unless specially prohibited by the constitution, to authorize municipal corporations to subscribe for the stock of a railroad company, and to issue their bonds therefor. If such authority is conferred to be exercised in a special manner, and it appears upon the face of the bond by recitals that the power was exercised in the manner required, proof that any or all of such recitals are incorrect will not constitute a defense to the bonds in the hands of a bona fide holder. St. Joseph Tp. v. Rogers, 16 Wall. [83 U. S.] 644. Though mere informalities in the issue of municipal bonds, avail nothing as against bona fide holders, yet where the bonds are issued without any authority or right, though reciting on their face facts essential to their due issuance, they are void as against everyone. Dill. Mun. Corp. § 108; Pendleton Co. v. Amy, 13 Wall. [80 U. S.] 297, 304; Supervisors of Marshall Co. v. Cook, 38 Ill. 44; Marsh v. Fulton Co., 10 Wall. [77 U. S.] 676; U. S. v. City Bank of Columbus, 21 How. [62 U. S.] 356, 364; Starin v. Town of Genoa, 23 N. Y. 439; Gould v. Town of Sterling, Id.; contra (seemingly), Lynde v. Winnebago Co., 16 Wall. [83 U. S.] 6; Bissell v. City of Kankakee, 64 Ill. 249. Consult also Mygatt v. Green Bay [Case No. 9,998]; Luling v. Racine [Id. 8,603]; Schenck v. Marshall Co. [Id. 12,449]; Goedgen v. Manitowoc Co. [Id. 5,501]; Nugent v. Putnam Co. [Id. 10,377]; Portsmouth Sav. Bank v. Yellow Head [Id. 11,296]; and notes to those cases.