(Superior Court of Cincinnati.)
Special Term, 1900.

STATE ex rel. LOSH v. JOHN H. GIBSON, TREAS.

---

A taxpayer of Hamilton county who has previously requested the solicitor of said county to begin an action in a court of competent jurisdiction to enjoin the completion of a contract entered into by officials of said county in contravention of law, on the refusal of said solicitor to begin such an action, may himself commence such an action in the name of the state.

A law authorizing the commissioners of a county to borrow money, and issue the bonds of the county therefor, for the purpose of raising money to construct and furnish an armory for the militia of the state, is unconstitutional and void. *Hubbard, Treas.*, v. *Fitzsimmons,* 57 Ohio St., 436.

Money paid into the county treasury voluntarily by taxpayers of said county under a levy of taxes to meet the interest and create a sinking fund for the payment of said bonds at maturity, must be devoted to the purpose for which it was collected; and the treasurer of the county cannot be enjoined at the instance of a taxpeyer from paying the same to the holders of the bonds; the treasurer; however, will be enjoined from collecting any levy of taxes for such purpose in the future.

*Bona fide* purchasers of county bonds issued by officers having no authority to do so will not be protected, and the bonds are void.

As the statute provides that the taxpayer

may have an injunction in cases where "a contract in contravention of the laws of this state has been or is about to be entered into or has been or is being executed," the taxpayer is not by the statute compelled to enjoin an illegal contract at any particular time, but has such right until the completion of the contract.

. A person, by laches, may be prevented in a period of time less than that provided for in the statute from asserting any claim to relief, where the conduct of such person may have created an estoppel against him.

Where the Supreme Court of a state has decided in favor of the right to issue certain bonds, and the same are issued on the faith of such decision, a subsequent decision of said court. denying the right to make such issue will not be permitted to invalidate the bonds. Gelpcke v. Dubuque, 68 U. S. (1 Wall.), 175.

Questions not made in the court of first instance, nor assigned for error in the lower court, will not be considered by the Supreme Court and cannot therefore as having been decided by the Supreme Court.

The United States circuit court of appeals in the case of The New York Life Insurance Co. v. Board of County Commissioners of Cuyahoga county has not held that bonds issued by a county for armory purposes are valid.

SMITH, J.

The petition alleges that George W. Losh is a tax-payer of Hamilton county; that prior to the commencement of this action he requested the county solicitor of said county to make application to a court of competent jurisdiction to restrain the treasurer of said county from paying out the money now in his hands and collected by taxation for that purpose, either the principal or interest of the bonds issued for the construction and furnishing of an armory in said county; and from collecting any further taxes to pay the interest or principal of said bonds; that the county solicitor refused to make such application; and that this action is brought in the name of the state of Ohio by the said tax-payer to secure the relief sought by the application to the county solicitor.

The treasurer has demurred to the petition on the grounds—

First: That the plaintiff has not the legal capacity to sue.

Second: That the petition does not state facts sufficient to constitute a cause of action.

The first ground requires no further notice than the citations of certain sections of our statutes to show that it is not well taken; and I cite these sections in full, not only because they are pertinent to the particular question under examination, but because in the consideration hereafter of other questions presented in the case, it will be necessary to refer to certain provisions contained in these sections. The sections to which I refer are Secs. 1277, 1278, 1278a, and 1010, as amended March 28, 1900, 94 O. L., 80.

"Section 1277. (Duty of prosecuting attorney as to restraining orders.) The prosecuting attorneys of the several counties of the state, upon being satisfied that the funds of the county, or any public moneys in the hands of the county treasurer, or belonging to the county, are about to be, or have been misapplied, or that any such public moneys have been illegally drawn out of, or withheld from the county treasury, or that a contract in contravention of the laws of this state has been or is being executed, or that a contract was procured by fraud or corruption, may apply by civil action in the name of the state to a court of competent jurisdiction, to restrain such contemplated misapplication of funds, or the completion of any such illegal contract not fully completed, or to recover back for the use of the county, all such public moneys so misapplied or so illegally drawn out or withheld from the county treasury, or to recover for the benefit of the county, any damages resulting from the execution of any such illegal contract.

"Section 1278. (In case of failure, etc., tax-payers may institute suit, etc.) In case the prosecuting attorney fails, upon a written request of any tax-payer of the county, to make the application or institute the civil action contemplated in the preceding section, such tax-payer may make such application or institute such civil action in the name of the state; or, in any case wherein the prosecuting attorney is authorized to make any such application, to bring any such suit, or institute any such proceedings against any county officer or person holding or having held any county office, for any misconduct in office, neglect of any duty prescribed by law, to recover money illegally drawn out of or illegally withheld from the county treasury, or to recover damages resulting from the execution of any such illegal contract as mentioned and referred to in the preceding section, and upon the written request of any tax-payer of the county, to bring any such suit or institute any such proceedings, shall fail, neglect or refuse so to do, or where for any reason the prosecuting attorney cannot bring such action, or where the prosecuting attorney has received and unlawfully withheld moneys belonging to the county, or has received or drawn out of the county treasury, public moneys which he is not lawfully entitled to demand and receive, any tax-payer, upon securing the costs, is hereby authorized to bring any such suit, or institute any such proceedings in the name of the state and any such

action shall be for the benefit of the county, the same as if brought by the prosecuting attorney.

"Section 1278a. (Allowance of tax-payer's costs; prosecuting attorney's compensation.) If the court hearing such case is satisfied that such tax-payer is entitled to the relief prayed for in his petition and a judgment is ordered in his favor, he shall be allowed his costs including a reasonable compensation to his attorney and for all services rendered by the prosecuting attorney under the provisions of Section 1277 in which the state is successful the court shall allow the prosecuting attorney reasonable compensation for his services and proper expenses incurred."

"Section 1010. * * * * The county solicitor shall have the powers and perform the duties conferred upon or required of the prosecuting attorney by Sections 1277, 1278 and 1278a, of the Revised Statutes, and shall in all respects be substituted for the prosecuting attorney under all the provisions of said sections; and hereafter the prosecuting attorney of any county having a county solicitor shall not have such powers or perform such duties. In case the county solicitor in any county fail, neglect or refuse to comply with the request of any tax-payer made upon him in the manner and for the purpose provided for in said Section 1278, then such tax-payer may proceed in the manner and for the purpose contemplated by said Section 1278, and the court shall make the allowances for costs including counsel fees provided for in said Section 1278a and though a judgment be not rendered in his favor, may, if satisfied that such tax-payer had good reason to believe that his allegations were well founded, or that they were sufficient in law, allow him costs and a reasonable compensation for his attorney."

The allegations of the petition bring the tax-payer within the provisions of these sections, and the action is therefore brought by him in the name of the state of Ohio.

We are thus brought to the consideration of the second ground of the demurrer, viz: That the petition does not state facts sufficient to constitute a cause of action.

The facts as they appear from the petition are as follows:

In February, 1887, the general assembly of Ohio passed an act which was intended to authorize the erection and furnishing by Hamilton county of an armory "for the use of the resident Ohio National Guard in said county." 84 O. L., 285. The law provided (*inter alia*) that the governor should appoint a board of three trustees, citizens of Hamilton county in whom was vesed the power to construct and furnish such an armory; that to enable them to do this work the commissioners of the county were authorized to issue and sell the bonds of the county to the extent of $100,000, bearing not to exceed four per cent. interest; and that the commissioners of the county annually at their June session should levy such amount of taxes as would pay the interest on such indebtedness and create a sinking fund sufficient to redeem the same at maturity.

In March, 1889, the general assembly passed another act authorizing the issue and sale of $15,000, of bonds in addition to those previously provided for, to be used for the same purpose as the first issue. 86 O. L., 568.

In accordance with the provisions of these acts the governor appointed a board of three trustees and they erected, completed and furnished the armory as contemplated by the law.

The money for this purpose was raised by the issue and sale by the commissioners of the county of the following bonds; one hundred and eighty "Armory construction bonds" each for $500, dated November 30, 1887, were issued June 29, 1888; twenty "Armory construction bonds" each for $500, dated November 30, 1887, were issued July 14, 1888; and thirty "Armory furnishing bonds" each for $500, dated April 30, 1889, were issued June 1, 1889.

As provided by the act, the commissioners of Hamilton county at their June sessions from the year 1888 to 1900, inclusive, for the purpose of creating a sinking fund and of paying the interest on said bonds, levied a tax upon the property in Hamilton county.

The plaintiff further says that the interest on said bonds was payable semi-annually on the first day of June and December of each year; that one of the said payments is due on the first day of December, 1900, and that said defendant as treasurer of said county is about to pay the interest due on December 1, 1900, amounting to $2,300 out of the money in his hands so levied and collected.

In January, 1898, the Supreme Court of Ohio in a case from Cuyahoga county (Hubbard, Treas. v. Fitzsimmons, 57 Ohio St., 436, 448), where an armory had been erected by that county and the bonds of the county issued to raise money to pay for the construction of the same, held the law unconstitutional, and enjoined the treasurer of the county from collecting the tax levied by the commissioners to pay the interest and raise a fund sufficient to pay the bonds at their maturity.

In stating the reasons for its decision the court declared that the validity of the tax levied to pay the bonds depended upon the purpose to be accomplished. If it was local, the tax was valid, but if general to the state it was invalid.

After citing the various sections of the con-

stitution of the state bearing upon the subject of the militia the court concludes as follows:

"The character of the militia as a state organization is thus definitely fixed. It is not at all affected by the fact that it may sometimes be called upon to aid the civil authorities in the preservation of public order. That duty is as clearly due to the civil authorities of Lorain county as to those of Cuyahoga. It is equally due from the entire guard to the proper civil officers of every county and municipality of the state. That some incidental beneft would result to Cuyahoga county from the erection of a public building in its chief city is doubtless true. But any view which would recognize such incidental benefit as a proper basis for a local imposition, would equally justify a tax on the property of Franklin county for the erection of a state building for the use of this court.

"Nor is this question in any way affected by the fact that the legal title to the armory is in Cuyahoga county. The character of the imposition is determined by the fact that the armory is to be used for the accomplishment of duties which the constitution charged upon the general assembly and officers of the state."

The decision in Hubbard, Treas. v. Fitzsimmons, *supra*, is conclusive upon the question of the validtiy of the two acts under which the armory in Hamilton county was erected and furnished. They must both be declared to be unconstitutional and void, and the only question remaining is, whether this case can be distinguished in any way from the Cuyahoga county case.

Generally speaking the relief asked by plaintiff may be classified under two heads:

First: That which seeks to prevent the money now in the hands of the treasurer from being applied to the payment of the interest and principal of the bonds.

Second. That which seeks to prevent the treasurer from making any further collections for the payment of the interest and principal of said bonds.

In the case of Hubbard, Treas. v. Fitzsimmons, *supra*, it does not appear that the treasurer had in his hands any money which had been collected under the act. The sole relief sought was the collection of taxes not yet paid. In the case at bar it appears from the petition that not only is there in the hands of the treasurer a redemption fund made up from previous levies but that at the time of the commencement of the action he also had in his hands the sum of $2,300, which had been levied and collected for the payment of interest.

It was stated at the bar by counsel for defendant as I understand them, that the allegations in the petition that any levies had been made or any money collected for a redemption or sinking fund were erroneous, although it was admitted that the $2,300 for interest was in the hands of the treasurer as alleged.

I refused to issue any temporary restraining order restraining the treasurer from paying out whatever money he had in his hands as a result of levies under this act, for the reason that I was quite clear that he was not entitled to such relief.

In State, etc., v. Bader et al., Commissioners, 56 Ohio St., 718, Alter sought to enjoin the execution of an unconstitutional act for a local road improvement after he had voluntarily paid all taxes assessed or to be assessed against him for that purpose. The opinion in the case says,

"But the record shows that Alter before bringing the suit had voluntarily paid all the taxes to be assessed against him for carrying out the provisions of the act.    *    * Upon the record, therefore, no burden was to be placed upon him for the purpose of carrying out the void act except the levy of the tax which he had voluntarily paid before bringing the suit. At the time of the suit, there was, therefore, no remedy available to him."

"It will not be a misappropriation of the moneys now in the treasury to the credit of this tund to use them for the purpose for which they were voluntarily paid. They cannot be recovered by those who voluntarily paid them. Nor can they be properly devoted to another purpose."

It is true that in the Alter case all of the money which was to be raised by the act had been collected by the treasurer, whereas in this case only part of the money has been collected. But the principle of that case applies with equal force to all or a part of the tax paid without protest under an unconstitutional law.

So far then as the money in the hands of the treasurer is concerned the plaintiff was not entitled to restrain the treasurer from paying the $2,300, collected and in his hands for the payment of interest, nor is he entitled to restrain the treasurer from the payment of any other money in his hands, if he has any which has been collected for the purpose of creating a sinking fund.

I come next to the consideration of the remaining question in the case, viz: Is the plaintiff entitled to restrain the treasurer from the collection of any taxes in the future for the payment of the interest or principal of those bonds.

It does not appear from the petition whether the holders of these bonds are persons to whom they were originally issued or persons to whom they have since been transferred by the original purchasers. Nor is the fact ma-

terial, because the rights of both classes are the same.

The first question here is not whether a county having power to issue a bond is bound to pay the same although there may have been some defect in the exercise of the power, but whether a bond issued by a county which has no power to issue the same is valid because the purchaser in good faith may have paid value for the same.

Unfortunately for the defendants this question was decided adversely to their contention in Hubbard v. Fitzsimmons, *supra*, where the court said,

"The case presents no reason why the purchaser of these bonds should be exempt from the familiar and salutary rule that one who relies upon the act of a public officer must take notice of the limits to his authority. The courts of this state have never encouraged confidence in the validity of acts of this character."

And aside from the decision in Hubbard v. Fitzsimmons, *supra*, it is a well settled principle that a *bona fide* purchaser of county bonds issued by officers having no authority to do so will not be protected and the bonds are void. Whitewell v. Pulaski Co., 2 Dillon, 249, (U. S.) ; Marshall Co. v. Cook, 38 Ill., 44 ; 87 Am. Dec., 282 ; Clapp v. Cedar Co., 5 Iowa, 15.

It is further urged by the defendants that inasmuch as the bonds were issued in 1888 and 1889 and the action of plaintiff was not commenced until 1900, a period of eleven and twelve years afterwards, that the plaintiff is guilty of laches and therefore entitled to no relief.

By reference to Sec. 1277, Rev. Stat., which has previously been set out in full, it will be seen that the right of the plaintiff is to have an injunction in cases where the public moneys "are about to be or have been misapplied, or that any such public moneys have been illegally drawn out of or withheld from the county treasury, or that a contract in contravention of the laws of this state has been or is about to be entered into, or has been or is being executed."

Thus the plaintiff is not by the statute compelled to enjoin an illegal contract at any particular time, but has such right as long as it is being executed. At any time before its completion he has a right of action which is continually existing until the completion of the contract ends it. The statute of limitation has, therefore, not barred the plaintiff from enjoining the further completion of this illegal contract which the county commissioners have made with the bondholders.

I concede, however, that a person may be prevented by laches in a time less than that provided for in the statute or limitations from asserting any claim to relief, where the conduct of such person may have created an estoppel. I therefore inquire whether the plaintiff is estoppel from securing the relief he asks.

In Wright, Treas. v. Thomas, 26 Ohio St., 346, it was decided that where a ditch had been constructed and an assessment made against the property of plaintiff under an unconstitutional law that, in the absence of any proof that the plaintiff actually or impliedly requested the work to be done or promised to pay for it, the assessment could be enjoined. To the same effect is City v. Alger, 44 Ohio St., 485.

And in Lewis, Aud'r, v. Symmes, 61 Ohio St., 471, this principle is again declared and enforced. The syllabus is: "The owner of lands within an assessment district defined in an unconstitutional act for the improvement of a public highway, not having promoted the making of the improvement, may enjoin the collection of an assessment to pay for such improvement in a suit for that purpose begun when an attempt is made to enforce the assessment. He is not required to begin such suit at an earlier day, though he may know of the improvement and of the intention to make the assessment. Columbus v. Alger, 44 Ohio St., 485, followed."

Moreover the delay in asserting the invalidity of the bonds has not affected the bondholders injuriously, but on the contrary has been a benefit to them ; because the plaintiff for the reasons stated was not compelled to assail the validity of the bonds at the time they were issued, and his delay in subsequently assailing them enabled the bondholders to have taxes collected for the payment of the interest and the redemption of the bonds to which they were not entitled.

The last point to be considered among those urged by the defendants is that the courts of this state when called upon in the year 1887, to do so, enforced a mandatory act requiring the city of Cincinnati to provide an armory ; that while the question of the constitutionality of the law was not raised, yet no judgment against the city could have been rendered unless the law was constitutional, and that, therefore, the court must be held to have declared the law to be constitutional ; and the county of Hamilton having proceeded in reliance upon such decision that local legislation for the construction of an armory was valid, and having issued bonds to persons relying upon that decision, it would be inequitable now to allow a later decision of the Supreme Court to affect contracts entered into on the strength of the former decision.

The principle relied upon by the defendants

is declared in Gelpcke v. Dubuque, 68 U. S. (1 Wall.), 175, the first syllabus of which decision is as follows:

"By a series of decisions of the Supreme Court of Iowa prior to 1859. In the State of Iowa, *ex relatione* v. County of Wapello (13 Iowa, 388), the right of the legislature of that estate to authorize municipal corporations to subscribe to railroads extending beyond the limits of the city or county 'and to issue bonds accordingly, was settled in favor of the right; and those decisions, meeting with the approbation of this court, and being in harmony with the adjudications of sixteen states of the Union, will be regarded as a true interpretation of the constitution and laws of the state so far as they relate to bonds issued and put upon the market during the time that those decisions were in force. The fact that the said Supreme Court of Iowa now holds that those decisions were erroneous and ought not to have been made, and that the legislature of the state had no such power as former courts decided that they had, can have no effect upon transactions in the past, however, it may affect those in the future."

But does the previous decision of our Supreme Court affirming without report the decision of the general term of this court which had affirmed the judgment in special term in the case of Wilson v. Cincinnati, 19 W. L. B., 10, afford an instance for the application of this principle?

In Wilson v. Cincinnati, *supra,* the plaintiff brought an action to recover rent due from the city for the use of a building known as the Armory building situated on Court street. Under an act of the legislature, 74 O.L., 235, Sec. 34, sec. 3085, R. S., requiring the city of Cincinnati to provide an armory for the militia, the city authorities made a lease of the building for the term of five years, and put the first regiment in possession, and the regiment continued in possession during the term of the lease, an[1] for a large part of the time the city paid the rent.

Subsequently the city refused to pay the rent and defended against a recovery on the ground that the contract was not enforceable against the city because made in violation of the general law which made void contracts with respect to which no money had been set aside before the same were entered into.

The courts held that as the law with respect to the city furnishing an armory was mandatory he general law referred to was not applicable.

This was the only question presented in the case.

But the rule is well settled in our Supreme Court that questions not made in the court of first instance or assigned for error in the lower courts will not be considered by the Supreme Court.

One of the latest cases on this subject is that of Railway Co. v. Construction Co., 49 Ohio St., 681, 684, in which the plaintiff recovered a judgment for over two hundred thousand dollars. On error to the Supreme Court the question was raised for the first time that the contract upon which the recovery was had was invalid. Now this was a question which was vital to a recovery and the rendering of a judgment on the contract was an implied finding that the contract was valid.

Yet the court refused to consider the question whether the contract was valid, saying,

"The question as to the validity of the agreement between the plaintiff and the defendant for the breach of which the suit below was commenced was not presented or considered in the common pleas nor in the circuit court; nor in this court until a short time before the case was reached for oral argument. * * * In view of these facts and the established rule of the court not to consider questions unless assigned for error in the courts below, we decline to consider the question as to the validity of this contract; and express no opinion upon it."

As the question of the constitutionality of the law under which the recovery was had in Wilson v. Cincinnati, *supra,* was not raised in the courts below, it could not under the practice in the Supreme Court have been considered in that court. The decision, therefore, in that case was not a decision holding that local legislation for the construction of an armory was constitutional, and the principle in Gelpcke v. Dubuque, *supra,* has no application in this case.

Since this case was argued and submitted the United States circuit court of appeals for the sixth circuit has decided the case of New York Life Insurance Co. v. Comr's of Cuyahoga county, reversing the decision of the United States circuit court; and I have been furnished by counsel for defendant with the advance sheets of the report of the decision of the court of appeals.

In that case the plaintiff is the holder of one hundred and forty-five bonds of the value of one thousand dollars each, being part of the bonds issued to pay for the construction of an armory in Cleveland and declared invalid in Hubbard v. Fitzsimmons, *supra,* the defendants are the commissioners of Cuyahoga county who issued the bonds, and the action is brought to recover the money paid for the bonds under an act of the legislature of Ohio passed on April 21, 1898, and now Sec. 2834c, Rev. Stat. That act, in brief, required the county commissioners in any county where

bonds have been issued for the construction of an armory and the bonds declared invalid by the Supreme Court, to pay to the holders of the bonds the amount paid for them by the holders with five per cent. interest.

The circuit court declared the law unconstitutional, and the circuit court of appeals has reversed the circuit court holding the law to be constitutional. As the case involves the construction of the constitution of the United States, it is not improbable that it will be taken to the Supreme Court of the United States.

But whatever may 'be the ultimate holding in the federal courts or of the Supreme Court of Ohio as to the validity of Sec. 2834c, the decision in the case before me cannot be affected by those decisions. Because Sec. 2834c does not purport to validate the bonds, but only to reimburse the holders for the money lost by reason of the invalidity of the bonds.

It is contended by counsel for defendant, however, that in the opinion by the circuit court of appeals, Severens, J., finds that the Supreme Court of Ohio in its decisions previous to that of Hubbard v. Fitzsimmons, Treas., *supra,* had declared such legislation as that under which the armory bonds involved in the present case were issued, to be valid; and therefore that the contention of the defendant that the principle of Gelpcke v. Dubuque, *supra,* should be applied here is held by the circuit court of appeals.

I do not think, however, that counsel has correctly interpreted the decision of the circuit court of appeals. If the construction which counsel puts upon that decision is the correct one, then the court would regard the bonds as valid and not invalid, whereas the decision in applying Sec. 2834c necessarily assumes the invalidity of the bonds.

It is true that the court does say that the holders of the bonds, in view of the previous decisions of the Supreme Court of Ohio with respect to the validity of local legislation were not guilty of negligence in assuming that the court would hold the law authorizing the issue of the armory bonds to be constitutional; but that is far from saying that the court had previously held a law authorizing the issue of armory bonds to be valid, which we must find to be the case in order to apply the principle of Gelpcke v. Dubuque, *supra...* .. .. .. .. ..

The court was merely opposing the contention that the plaintiff was guilty of negligence in purchasing the bonds.

Thus the court says: "But it seems to us that there is no sufficient ground on which negligence in making a right determination of the validity of the law can be charged upon the purchaser. * * * We are referring to the existing circumstances and the legal pre-

sumption in favor of the validtiy of the statute, as well as the prior decisions on similar subjects to show that a man of business could not be charged with negligence in not anticipating that the statute would be held to be unconstitutional."

Having examined and considered all the authorities submitted by counsel for the defendant; and having considered the application to the case of every principle of law invoked as a defense to this action, nevertheless, in view of the decision of our Supreme Court I see no escape from the conclusion that the bonds issued for the construction and furnishing of the armory in Hamilton county are null and void. And an order of injunction will therefore issue restraining the defendant as treasurer of Hamilton county from collecting in the future any taxes levied to pay either the principle or interest on the same.

A. J. Cunningham, for Plaintiff.

Gideon C. Wilson & Oliver Jones, County Solicitors, for Defendant.

H. D. Peck, for certain bondholders.